STATE OF NEBRASKA, APPELLEE, V.
RALPH E. THOMAS, APPELLANT.

314 N.W.2d 15

Filed December 28, 1981.   No. 44174.

Leo M. Williams for appellant.

Paul L. Douglas, Attorney General, and John Boehm for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and HASTINGS, JJ.

CLINTON, J.

The appellant, Ralph E. Thomas, was charged with assault in the first degree as delineated in Neb. Rev. Stat. § 28-308 (Reissue 1979). Upon motion by the State, the appellant's case at trial was consolidated with the State's lawsuits against the appellant's two brothers, Gary Thomas and Randy Thomas. Gary and Randy's convictions, assault in the second degree and assault in the third degree, respectively, arose out of the same incident as that which brings the appellant before this court on appeal. In the trial before a jury, the appellant was found guilty as charged and sentenced to 3 to 5 years in the Nebraska Penal and Correctional Complex.

On appeal to this court the appellant assigned and argued the following errors: (1) The evidence presented

was insufficient to sustain a finding of guilt beyond a reasonable doubt; (2) Any finding of guilt as an aider and abettor would be insufficiently supported by the evidence; (3) A conviction for assault in the first degree would be contrary to law as a conviction of the aider for a crime greater than that of the principal; and (4) The sentence was excessive.

The following two paragraphs explain, as revealed by the evidence, the events of August 4, 1980, surrounding the incident leading to Ralph Thomas' conviction. In the afternoon of that day Gary Thomas, the appellant's brother, entered a tavern in Santee, Nebraska, and ordered a case of beer. When the bartender returned from the cooler with Gary's order, he found Gary and Dean Kitto, the Santee chief of police, engaged in a fistfight. In the course of the fight, Kitto sprayed Gary in the face with what appeared to be mace. The altercation ended and Gary, still feeling the effects of the mace, stepped outside. Approximately at the same time, Gary met up with his brothers, Ralph and Randy. It was decided, by whom is unclear, that they would find Thornton Rave, a part-time policeman, and ask that Kitto's gun and mace be taken from him. Other parties irrelevant to this appeal accompanied the Thomas brothers in their search for Thornton Rave.

Meanwhile Rave had driven to the Kitto residence to investigate a report to the effect that the Thomas brothers were breaking the windows from a police car parked at that location. Rave asked a neighbor to the Kitto residence if she knew anything about the broken windows, and as he was walking back to his police car he was confronted and attacked by the Thomas brothers. Ralph first struck Rave in the face with his fist. Then Gary hit Rave in the head with a board about 2 feet long. Rave fell to the ground, and Randy threw himself on Rave belly-flop style. Rave testified that he was also kicked. The altercation lasted about 5 minutes. Rave was taken to a medical clinic in Santee that night for treatment. He testified at trial that as a result of the

beating he suffered a broken eardrum, a slight concussion, bruises, scratches, and a permanent loss of hearing.

Assault in the first degree is defined as follows: "A person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person." § 28-308(1). The appellant claims in his first assignment that the evidence presented at trial was insufficient to find that serious bodily injury was sustained. Serious bodily injury is defined as "bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." Neb. Rev. Stat. § 28-109(20) (Reissue 1979). The bulk of the evidence concerning the victim's injuries is the testimony of the victim himself. The victim, Rave, testified he sustained a "busted eardrum," a slight concussion (although he admitted not knowing the meaning of the term *concussion*), a loss of hearing, a temporary loss of memory, and various scrapes and bruises. His testimony was corroborated by the testimony of his wife and photographs showing the scrapes and bruises around his upper body and face. No expert medical testimony was offered.

There is nothing which prohibits the trier of fact from considering the victim's testimony concerning his own injuries to the extent the victim has knowledge of his injuries. Symptoms and effects such as scrapes, bruises, loss of hearing, and memory loss are all within the firsthand knowledge of the victim and were properly presented before the trier of fact. The victim's incompetence to use such terms as *concussion* was exposed on cross-examination. In *Eiting v. Godding,* 191 Neb. 88, 91, 214 N.W.2d 241, 243 (1974), where the only testimony offered concerning the extent of the plaintiff's injuries was the testimony of the plaintiff himself, we said: "In personal injury cases where the injuries are objective and the conclusion to be drawn from proved

basic facts does not require special technical knowledge or science, the use of expert testimony is not legally necessary." In *Yost v. City of Lincoln,* 184 Neb. 263, 265, 166 N.W.2d 595, 597 (1969), we said: "[D]irect expert testimony is not indispensable if the issue can be determined from the evidence presented and the common knowledge and usual experience of the trier of fact." See, also, *Clark v. Village of Hemingford,* 147 Neb. 1044, 26 N.W.2d 15 (1947). The greatest portion of testimony offered by the victim was within a layman's understanding. Therefore, the trier of fact, a jury in this case, could by way of its common knowledge and usual experience find the victim had sustained a serious bodily injury as required under the statute. "This court has adopted the rule in criminal cases that the verdict of a jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. [Citations omitted.] We have also held that in determining the sufficiency of the evidence to sustain a conviction in a criminal prosecution, it is not the province of this court to resolve conflicts in the evidence, pass upon the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence, as such matters are for the jury. [Citation omitted.]" *State v. Pena,* 208 Neb. 250, 253, 302 N.W.2d 735, 737 (1981).

The appellant also claims the blow delivered by a fist is not sufficient to cause the serious bodily injury necessary under the statute. Because the beating of Officer Rave was a group-like brawl committed by the three Thomas brothers, attributing particular injuries to particular actions is very difficult. But as a participant of this conspiratorial effort to harm the officer, the appellant is liable for all of the victim's injuries. *Pinkerton v. United States,* 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). "[S]o long as the partnership in crime continues, the partners act for each other in carrying it forward. It is settled that 'an overt act of one partner may be the act of all without any new agreement specif-

ically directed to that act.' [Citation omitted.] . . . The act done was in execution of the enterprise. The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle. That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all." 328 U.S. at 646-47. The *Pinkerton* holding has been criticized, as theoretically it can hold a person liable for all the results of a large crime syndicate while the accused can be virtually uninvolved in much of the criminal activity. But obviously that criticism is inapplicable here. The appellant was directly and physically a part of the altercation. He cannot argue that the injuries to Officer Rave were not a foreseeable result of his actions in concert with his brothers.

There is little doubt that a permanent loss of hearing is a "bodily injury which involves . . . protracted loss or impairment of the function of any part or organ of the body." § 28-109(20). Therefore, the appellant is liable for the hearing loss, a serious bodily injury, and, as such, whether the hearing injury was directly a result of the appellant's fist is irrelevant.

Prior to deliberations, the jury was instructed in part at instruction No. 12 as follows: "To be guilty of the crime charged it is not necessary that the state prove that the defendant himself committed the unlawful act or acts in question.

"Whoever aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender."

The appellant, in his second and third assignments of error, claims that the evidence presented was insufficient to find the appellant guilty as an aider and abettor, and notwithstanding that argument, the appellant as an aider and abettor cannot be found guilty for a crime of greater degree than the principal.

Neb. Rev. Stat. § 28-206 (Reissue 1979) reads: "A person who aids, abets, procures, or causes another to com-

mit any offense may be prosecuted and punished as if he were the principal offender." Any person who is present at the place of the crime, aiding and assisting in the commission of the crime, is a principal. *State v. Swiney,* 179 Neb. 230, 137 N.W.2d 808 (1965). Therefore, the appellant is deemed punishable for all injuries resulting from the crime as a principal without the necessity of proving his own particular causation for a particular injury.

The appellant is tried as a principal, and under the statute the common law distinctions between principal and aider and abettor are abolished. *State v. Rice,* 188 Neb. 728, 199 N.W.2d 480 (1972). Therefore, he may be convicted of any crime supported by the evidence of the facts and his intent. As such, the appellant was tried, convicted, and punished as a principal, and his second and third assignments of error alleging defects in an aiding and abetting theory are irrelevant.

Lastly, the appellant complains that the sentence of 3 to 5 years in the Nebraska Penal and Correctional Complex is excessive. The appellant was convicted of a Class III felony, the maximum sentence for which is 20 years. Neb. Rev. Stat. § 28-105 (Reissue 1979). It is a well-established rule that this court on appeal will not disturb a sentence imposed within the limits prescribed by statute absent an abuse of discretion on the part of the trial court. As no such abuse has been shown, the sentence and conviction are affirmed.

AFFIRMED.

WHITE, J., participating on briefs.