STATE OF NEBRASKA, APPELLEE, V.
MATTHEW B. JACKSON, APPELLANT.
601 N.W. 2d 741

Filed October 29, 1999.   No. S-98-812.

James Martin Davis for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Matthew B. Jackson was convicted of manslaughter in the death of Christopher Knapp and first degree assault in the beating of James Haseltine. Jackson was sentenced to 10 to 12 years' imprisonment for the manslaughter conviction and 10 to 12 years' imprisonment for the assault conviction, with the sentences to be served concurrently. Jackson timely appealed these convictions.

## SCOPE OF REVIEW

■ On appellate review, a criminal conviction must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. In determining whether the evidence is sufficient to sustain a conviction in a jury trial, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explana-

tions, or reweigh the evidence presented to the jury, which are within the jury's province for disposition. *State v. Larsen*, 255 Neb. 532, 586 N.W.2d 641 (1998).

■ The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998).

■ In all proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. McManus*, 257 Neb. 1, 594 N.W.2d 623 (1999).

## FACTS

After 9 p.m. on October 4, 1997, Jackson and Phillip Caudell, Jr., were at Jake's Mini Mart located at 8320 Blondo Street in Omaha, Nebraska. Jackson used a pay telephone to call a taxicab, and the owner of the business adjacent to the mini mart testified that he overheard two men discussing that their cab would take 20 to 30 minutes to arrive.

Jackson and Caudell sat down outside the mini mart to wait. When Knapp and Haseltine exited the mini mart, they apparently made eye contact with Jackson and Caudell. Jackson stated that he was asked by either Knapp or Haseltine what he was looking at. Jackson said he replied, "What . . . are you looking at?" Jackson testified that a similar verbal exchange occurred between Caudell and the other man.

Knapp and Haseltine crossed the street, heading south, and stopped. Jackson said that one of the two men turned and yelled, "If you want to talk shit, come over here and talk shit, you wetback." Jackson stated that Caudell immediately got up and started walking across the street toward Knapp and Haseltine. Jackson followed Caudell across the street to where Knapp and Haseltine were standing.

Jackson claimed he was behind Caudell when Caudell and Knapp began fighting. Jackson stated that when he ran up to Caudell, intending to break up the fight, he was shoved by Haseltine. Believing he was being attacked, Jackson hit

Haseltine three times in quick succession, and Haseltine fell down. Jackson denied ever hitting or touching Knapp.

After Knapp and Haseltine had been beaten and knocked to the ground, Jackson and Caudell jogged back across the street to pick up their purchases, which they had left outside the mini mart. The two men returned to Caudell's apartment and called someone to come and get them.

Jennifer McGann, a passenger in the car that picked up Jackson and Caudell, testified that Jackson informed her that he and Caudell had been in a fight. Jackson, who did most of the talking, explained the fight in some detail, and Caudell seemed to agree with Jackson's account.

Later at a party, Jackson again bragged about the fight and stated that the victims had not had a chance to get their fists up. He said that he had kicked one of the individuals, and he had blood on his hand and socks. Jackson explained that words and looks had been exchanged between the four men and that he and Caudell just walked up to the other men and started hitting them. The police officer who arrived on the scene was told by Haseltine that he and Knapp had been jumped.

Joe DeSanti testified that he was driving east on Blondo Street at approximately 9:30 p.m. on the night of the fight when he saw four men standing in an empty parking lot. One man struck another man wearing red sweat pants and caused him to fall to the ground. DeSanti turned his vehicle around, and when he arrived at the parking lot, two of the men were gone, and the other two were lying on the ground. DeSanti asked the injured men what had happened, and Haseltine told him that "they were walking home from the store and two men came up and beat the shit out of them."

James Swanson and his wife also passed the parking lot around the time of the fight. Swanson turned his vehicle around, entered the parking lot, and saw two men running across the street. Swanson described one as "darker-skinned" and one as "lighter-skinned." One appeared to have on a long, white T-shirt, and the other had long hair or was wearing a bandanna. One of the injured men told Swanson that they had been jumped. Swanson then went for help and called the police.

Todd and Brenda Andrews also arrived at the parking lot soon after the fight and observed Haseltine cradling Knapp's head in his lap. Haseltine told them that two men, one of whom he described as being black and the other Hispanic, had jumped Knapp and Haseltine. Brenda Andrews stated that Knapp appeared incoherent and was moaning and repeatedly saying, "wait."

Knapp and Haseltine were taken to a hospital. While in the emergency room, Haseltine suffered a seizure and was hospitalized for several days. Haseltine has no memory of the time immediately preceding or following the incident. Knapp's condition was critical. He had external injuries caused by separate blunt traumas and internal head injuries. He did not regain consciousness and died a couple of weeks later.

The head dispatcher at the cab company called by Jackson testified that the name left with the dispatcher by the caller was "Phillip." Police determined that the address given to the dispatcher was Jackson's residence.

After Knapp died, Jackson was charged with and convicted of the first degree assault of Haseltine and manslaughter as a result of the death of Knapp.

## ASSIGNMENTS OF ERROR

Jackson asserts that (1) the trial court erred by not granting his motion for a mistrial, (2) the trial court erred by allowing the State to improperly impeach him with inadmissible character evidence, (3) the trial court erred by giving the jury an aider and abetter instruction when there was no evidence to support the charge, (4) the evidence was insufficient to sustain his conviction for manslaughter, and (5) the evidence was insufficient to sustain his conviction for first degree assault.

## ANALYSIS

### MISTRIAL

Jackson claims that the trial court erred by not granting him a mistrial. Robert Gellner, the owner of a comic shop next to Jake's Mini Mart, testified that on October 4, 1997, he overheard two men discussing the sale or purchase of drugs. Jackson objected to the testimony as hearsay. The trial court sustained

the objection and instructed the jury to disregard it. Subsequently, in response to another question, Gellner again referred to the two men discussing the purchase or sale of drugs. Again, the defense attorneys objected to the testimony, and the trial court struck the testimony.

Out of the presence of the jury, Jackson's and Caudell's attorneys moved for a mistrial, claiming that Gellner's testimony denied them a fair trial. The motions were overruled. On appeal, Jackson claims the trial court erred because in his opening statement, Jackson's counsel told the jury that this case involved only a fight, and therefore Gellner's mention of drugs undermined counsel's credibility. Jackson asserts that Gellner's testimony exposed him to undue surprise and prejudice and, therefore, entitled him to a mistrial. We find these arguments to be without merit.

A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus would result in preventing a fair trial. *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998). The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *Id.* A judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right, and denying a just result in matters submitted for disposition. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

We conclude the trial court did not abuse its discretion in denying Jackson's motion for a mistrial. The trial court's action corrected any prejudice that might have been caused by the witness' mention of drugs. The trial court directed that the inappropriate testimony be stricken and ordered the jury to disregard it. A mistrial is not necessarily required if the resulting prejudice can be cured by an admonition to the jury. *State v. DeGroot*, 230 Neb. 101, 430 N.W.2d 290 (1988). An objection followed by an admonition or instruction is typically presumed to be sufficient to dispel prejudice. *Id.* When the jury is admonished to disregard

objectionable questions and answers, a mistrial ordinarily will not be granted. *Id.*

## IMPROPER IMPEACHMENT

Jackson testified in his own behalf, and Jackson's counsel requested that the State be prevented from eliciting testimony from Jackson regarding two prior convictions for assault. The State believed that it could offer evidence of Jackson's prior aggressive behavior as an element of the crime charged. The State argued that if Jackson asserted that Knapp and Haseltine had been the first aggressors, Jackson's character for peacefulness or aggressiveness became an issue in the case. In other words, the State believed that if Jackson claimed that the victims had started the fight, the State could "put on both evidence of the victims' peacefulness and the defendants' aggressiveness."

The trial court allowed the evidence of Jackson's prior assaults, concluding that once Jackson introduced evidence that he was not the first aggressor, he was claiming "a passive trait on his part [and attempting to put that trait] into evidence." The trial court concluded that if Jackson testified that he was acting in self-defense, his character would be placed at issue and the State would be permitted to examine the details of the prior assaults.

Jackson had been convicted in 1995 of attempted first degree assault. In response to questions by the State, Jackson stated that in 1994 he attacked Ryan Lovell and that Jackson had been the first aggressor. Jackson said he hit Lovell in the face and head and caused severe injury to Lovell because he thought Lovell was flirting with his girl friend.

In response to Jackson's objection to the testimony, the State candidly admitted this testimony was offered for the purpose of showing that Jackson was the first aggressor, to prove his aggressiveness, to prove his character trait for aggressiveness, and to prove that he acted in conformity with this character trait. Also over objection, the State was permitted to question Jackson about a prior adjudication as a juvenile in which Jackson admitted that he hit Forrest Hickman in the face three or four times, causing serious injury.

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules, not judicial

discretion, except in those instances where judicial discretion is a factor involved in the admissibility of evidence. *State v. McManus*, 257 Neb. 1, 594 N.W.2d 623 (1999). Neb. Rev. Stat. § 27-609 (Reissue 1995) provides:

> (1) For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (b) involved dishonesty or false statement regardless of the punishment.

In *State v. Caradori*, 199 Neb. 691, 260 N.W.2d 617 (1977), we explained that § 27-609 limits the scope of any inquiry that may be made on cross-examination of a defendant in a criminal case. The statute permits inquiry when the defendant is a witness as to whether the defendant has previously been convicted of a felony. If the defendant admits that he has been convicted of a felony, the defendant may then be asked about the number of such convictions. If the defendant answers correctly, the inquiry must end at that point. However, if any answer of the defendant in this regard is incorrect, or if he claims not to remember, the fact of the conviction or convictions may only be shown by " 'the record thereof.' " *State v. Caradori*, 199 Neb. at 694, 260 N.W.2d at 620. Exploration of the charge or charges of which the defendant was previously convicted, the details thereof, or the sentence imposed upon the defendant is not permitted. *Id.* See, also, *State v. Whiteley*, 234 Neb. 693, 452 N.W.2d 290 (1990).

Here, the trial court allowed the facts of Jackson's prior convictions for assault not for the purpose of impeachment, but upon the State's urging, as evidence that Jackson had been the first aggressor in his fight with Haseltine in order to rebut Jackson's claim of self-defense. Neb. Rev. Stat. § 27-404 (Reissue 1995) provides:

> (1) Evidence of a person's character or a trait of his or her character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except:

(a) Evidence of a pertinent trait of his or her character *offered by an accused*, or by the prosecution to rebut the same;

(b) Evidence of a pertinent trait of character *of the victim* of the crime *offered by an accused* or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim öffered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor. . . .

. . . .

(2) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Emphasis supplied.)

It is clear that § 27-404 does not permit the State to offer evidence of Jackson's prior assaults to establish that Jackson was the first aggressor in this fight. The exception under § 27-404(1)(a) permits the accused to offer evidence of his or her own character trait, which the prosecution may rebut. Section 27-404(1)(b) permits the offering of a pertinent character trait of the victim offered by the accused or the prosecution to rebut the same.

Section 27-404(1)(a) and (b) are mutually exclusive. When an accused couples a claim of self-defense with evidence that the victim was the first aggressor, the accused does not interject the issue of the accused's character. See *State v. Austin*, 115 Ohio App. 3d 761, 686 N.E.2d 324 (1996). The accused's character is introduced in accordance with the provisions of § 27-404(1)(a) when the accused offers positive character evidence pursuant to Neb. Rev. Stat. § 27-405 (Reissue 1995). See *State v. Austin, supra*. Section 27-405 provides:

(1) In all cases in which evidence of character or a trait of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(2) In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

In a claim of self-defense, the character of the accused for aggressiveness is not admissible unless the accused has offered evidence of the accused's pertinent character trait. See § 27-404(1)(a). The State was not permitted to question Jackson about prior violent conduct simply because Jackson claimed that Haseltine was the first aggressor. Here, the trial court incorrectly concluded that since Jackson had raised the issue of self-defense, his prior acts of assault could be inquired into by the State.

Having concluded that such evidence of Jackson's character was improperly admitted, we consider whether the erroneous admission of this evidence entitles Jackson to a reversal of his convictions. In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999). In determining whether error in admitting evidence was harmless, an appellate court bases its decision on the entire record in determining whether the evidence materially influenced the jury in a verdict adverse to the defendant. *State v. Chojolan*, 253 Neb. 591, 571 N.W.2d 621 (1997).

We conclude that the State has not demonstrated that the error was harmless beyond a reasonable doubt. Jackson's claim of self-defense was based upon his assertion that Haseltine was the first aggressor. Clearly, Jackson's previous assaults, in which he admitted to being the first aggressor, were prejudicial to his claim of being attacked by Haseltine. The State's admitted purpose in offering the prior assaults was to prove that Jackson acted in conformity therewith. For this reason, Jackson did not receive a fair trial, and his conviction for assault is reversed.

## AIDING AND ABETTING MANSLAUGHTER

We next consider Jackson's assignments of error regarding his conviction for manslaughter. Jackson argues that the State presented insufficient evidence to warrant the reading of the aid-

34

ing and abetting instruction and that there was insufficient evidence to sustain Jackson's conviction for manslaughter.

The common-law distinction between principal and aider and abettor has been abolished; a person who aids, abets, procures, or causes another to commit any offense may be prosecuted as if he were the principal offender. See Neb. Rev. Stat. § 28-206 (Reissue 1995). Aiding and abetting requires some participation in a criminal act which must be evidenced by some word, act, or deed. No particular acts are necessary, nor is it necessary that the defendant take physical part in the commission of a crime or that there be an express agreement to commit the crime. Mere encouragement or assistance is sufficient. See *State v. Larsen,* 255 Neb. 532, 586 N.W.2d 641 (1998).

Evidence of mere presence, acquiescence, or silence is not enough to sustain the State's burden of proving a defendant guilty under an aiding and abetting theory. *Id.* A person may be an aider or abettor in involuntary manslaughter because of a common purpose to participate in unlawful acts, the natural and proximate result of which is to kill another, but when persons are present and are aiding and assisting each other in the commission of unlawful acts which proximately result in the death of another, all such persons are in fact principals. *Puckett v. State,* 144 Neb. 876, 15 N.W.2d 63 (1944). One who intentionally aids and abets the commission of a crime may be responsible not only for the intended crime, if it is in fact committed, but also for other crimes which are committed as a natural and probable consequence of the intended criminal act. *State v. Mantich,* 249 Neb. 311, 543 N.W.2d 181 (1996).

The question then is whether the evidence was sufficient to warrant the giving of an aider and abettor instruction and whether there was sufficient evidence to sustain Jackson's conviction for manslaughter. While it is not necessary that Jackson took physical part in the attack on Knapp or that he expressly agreed to the attack, his participation must be evidenced by some word, act, or deed.

We therefore proceed to examine the evidence regarding Jackson's activity on the date of the assault. On appellate review, a criminal conviction must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to

support the conviction. *State v. Larsen, supra.* In determining whether the evidence is sufficient to sustain a conviction in a jury trial, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented to the jury, which are within the jury's province for disposition. *Id.*

Jackson claims he was in the process of assisting or attempting to assist Caudell, who had confronted Knapp; that he did nothing more than follow Caudell across the street; and that in attempting to break up the fight between Caudell and Knapp, he was attacked by Haseltine. Jackson asserts that his actions were in self-defense, that he did not aid and abet Caudell, and that his mere presence at the fight did not constitute aiding and abetting.

Jackson argues that there was no evidence he procured or caused Caudell to commit the offense against Knapp and that Caudell was the person who assaulted Knapp. Jackson claims that he did nothing to encourage Caudell to assault Knapp and that there was no evidence regarding his words or conduct which rose to the level of either aiding or abetting Caudell to assault Knapp. We disagree. One who intentionally aids or abets the commission of a crime is responsible not only for the intended crime, but also for other crimes which are committed as a natural and probable consequence of the intended criminal act. *State v. Mantich, supra.*

Both Jackson and Caudell crossed the street and assaulted Knapp and Haseltine. In Jackson's statements after the incident, there is evidence from which the jury could have found that Jackson and Caudell had a common purpose of assaulting Knapp and Haseltine with their fists and feet. One eyewitness saw Jackson and Caudell standing in close proximity to one another and to Knapp and Haseltine. Jackson bragged at a party that he and Caudell jumped Knapp and Haseltine because they were "giving us shit . . . snubbing us." Jackson stated that Knapp and Haseltine did not have a chance to get their fists up, that words and looks had been exchanged, and that he and Caudell just walked up to Knapp and Haseltine and started hitting them.

In *State v. Thomas,* 210 Neb. 298, 314 N.W.2d 15 (1981), Ralph E. Thomas was charged with assault in the first degree. In his assignments of error, Thomas claimed that the evidence

presented was insufficient to find him guilty as an aider and abettor. The beating of a police officer was a group-like brawl committed by Thomas and his two brothers, and attributing particular injuries to particular actions was very difficult. We concluded however that Thomas, as a participant in the conspiratorial effort to harm the officer, was liable for all the victim's injuries, relying on *Pinkerton v. United States*, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946): " '[S]o long as the partnership in crime continues, the partners act for each other in carrying it forward. It is settled that "an overt act of one partner may be the act of all without any new agreement specifically directed to that act." . . .' " *State v. Thomas*, 210 Neb. at 301-02, 314 N.W.2d at 18.

Mere encouragement or assistance is sufficient for a defendant to be prosecuted for aiding and abetting. See *State v. Sanders*, 241 Neb. 687, 490 N.W.2d 211 (1992). Giving all reasonable inferences to the State, which we are required to do, see *State v. Larsen*, 255 Neb. 532, 586 N.W.2d 641 (1998), the jury could have determined from the evidence that Jackson's participation in the assault on Haseltine could also be characterized as assistance or encouragement to Caudell's assault on Knapp. The jury could also have reasonably determined that Knapp's death was a natural and expected consequence of the beating inflicted by Caudell.

Prior to the jury's deliberations, the trial court gave an instruction on aiding and abetting. Although Jackson was not the person who struck the blows to Knapp, it could reasonably be inferred from his words, acts, and deeds that he assisted and participated in the assault on Knapp. Accordingly, there was sufficient evidence of aiding and abetting to give such instruction to the jury and to sustain Jackson's conviction for manslaughter.

Jackson also argues that the State did not prove the first two elements set forth in instruction No. 10, which stated:

> Either or both of the Defendants can be guilty of Manslaughter . . . even if he personally did not commit every or any act involved in the crime so long as he aided someone else to commit it. A Defendant aided someone else if:

1. A Defendant encouraged or intentionally helped another person to commit the offense of Manslaughter . . . and

2. A Defendant knew that the person intended to commit or expected the other person to commit an unlawful act . . . and

3. The offense of Manslaughter [was] committed by that other person.

Jackson claims that based on instruction No. 10, there was no evidence which satisfied the first two elements of the instruction. Jackson states there was no evidence that would indicate in any manner that he knew Caudell was going to commit the crime of manslaughter.

A person commits manslaughter if he kills another without malice, either upon a sudden quarrel or unintentionally while in the commission of an unlawful act. Neb. Rev. Stat. § 28-305 (Reissue 1995). The unlawful act committed by Caudell was the assault on Knapp. Thus, Jackson aided and abetted Caudell if it could reasonably be determined by the trier of fact that Jackson encouraged or intentionally helped Caudell to commit the assault on Knapp.

It is the duty of the trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements have the effect of withdrawing from the jury an essential issue or element in the case are prejudicially erroneous. *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998). Before an error in the giving of an instruction can be considered as a ground for reversal of a conviction, it must be considered prejudicial to the rights of the defendant. *State v. Derry*, 248 Neb. 260, 534 N.W.2d 302 (1995).

That part of instruction No. 10 given by the trial court which stated that Jackson aided Caudell if he "encouraged or intentionally helped another person to commit the offense of Manslaughter" was incorrect. Jackson correctly points out that one cannot intentionally help to commit the offense of manslaughter in the sense that manslaughter is an unintentional killing. However, we conclude that this instruction was not prejudicial to Jackson. Instruction No. 10 created a greater burden

on the State to prove intent, which is not an element of the crime of manslaughter. The instruction as given did not withdraw any of the essential elements of the crime of manslaughter from the jury's consideration.

In order to find Jackson guilty of manslaughter, the jury did not have to determine that Jackson knew Caudell intended to commit the offense of manslaughter. There is no requirement of intention to kill in committing manslaughter. The distinction between second degree murder and manslaughter is the presence or absence of intent to kill. *State v. Jones*, 245 Neb. 821, 515 N.W.2d 654 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

The final question is whether Jackson should get a new trial on the manslaughter charge. Jackson's conviction for manslaughter involved his participation in the assaults on Haseltine and Knapp. Since the erroneous admission of evidence of the prior assaults prejudiced Jackson's conviction for assault, we conclude that this evidence affected the jury's determination regarding Jackson's involvement in the death of Knapp. We cannot say beyond a reasonable doubt that had Jackson been acquitted of the assault on Haseltine, the jury would still have convicted Jackson of manslaughter. The two incidents are so directly related that the prejudice from the erroneous admission of evidence of the prior assaults clearly taints both convictions.

## CONCLUSION

Because we conclude the evidence was sufficient to sustain Jackson's convictions but that part of the evidence should not have been admitted, we reverse the judgments of conviction, vacate the sentences, and remand the cause for a new trial on both charges.

REVERSED AND REMANDED FOR A NEW TRIAL.