STATE OF NEBRASKA, APPELLEE, V. EDWIN KULA,
ALSO KNOWN AS ED KULA, APPELLANT.
616 N.W. 2d 313

Filed August 11, 2000.    No. S-99-093.

Mark M. Sipple, of Sipple, Hansen, Emerson & Schumacher, and Adam J. Sipple, of Johnson & Mock, for appellant.

Charles W. Campbell and Vincent Valentino, of Angle, Murphy, Valentino & Campbell, P.C., Special Prosecutors, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

In December 1995, Edwin Kula was convicted by a jury of the first degree murder of Jerry Carlson and the use of a weapon to commit a felony. The district court for Platte County sen-

tenced Kula to life in prison for first degree murder and to a consecutive term of 6 to 20 years' imprisonment for use of a weapon to commit a felony. Kula's 1995 convictions were reversed on appeal to this court due to prosecutorial misconduct, and the cause was remanded for a new trial. *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997) (*Kula I*).

On remand, Kula moved for dismissal on the basis that retrial would violate his protection against double jeopardy and his right to a speedy trial. The district court rejected Kula's arguments, and upon appeal, this court affirmed the district court's order and remanded the cause for further proceedings. *State v. Kula*, 254 Neb. 962, 579 N.W.2d 541 (1998).

Upon retrial, venue was changed to the district court for Saunders County. In December 1998, Kula was convicted by a jury of second degree murder and the use of a weapon to commit a felony. The district court for Saunders County sentenced Kula to life in prison for second degree murder and to a consecutive term of 6 to 20 years' imprisonment for use of a weapon to commit a felony. Kula appeals his second convictions and sentences. We reverse, and remand for a new trial.

## STATEMENT OF FACTS

The facts of this case and the procedural history pertaining to Kula's first trial are summarized in detail in *Kula I* and will not be repeated here except to the extent necessary to address the issues raised in this appeal. The evidence presented at the second trial was substantially similar to that presented at the first trial and recounted in *Kula I*. To the extent the evidence differed at the second trial and those differences are pertinent to the issues in this appeal, such differences are set forth in connection with the analysis of those issues below.

## ASSIGNMENTS OF ERROR

Kula makes 29 assignments of error on appeal. We conclude that the following assigned error has merit and constitutes reversible error: The district erred in overruling Kula's best evidence objection to the admission of written transcripts of Kula's tape-recorded statement to Nebraska State Patrol Investigator William Mach and by permitting the redacted written transcrip-

tion of the tape-recorded statement to be given to the jury for its review during deliberation without the edited tape-recorded statement having been played in open court.

With respect to the remaining assignments of error, we discuss certain assignments of error which are likely to recur during further proceedings. See *State v. Dixon*, 259 Neb. 976, 614 N.W.2d 288 (2000).

## STANDARDS OF REVIEW

The following standards of review are applicable to Kula's first assignment of error pertaining to the admission of the written transcripts: In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. Lessley*, 257 Neb. 903, 601 N.W.2d 521 (1999). A judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Myers*, 258 Neb. 272, 603 N.W.2d 390 (1999).

In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Jackson*, 258 Neb. 24, 601 N.W.2d 741 (1999). In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). In determining whether error in admitting evidence was harmless, an appellate court bases its decision on the entire record in determining whether the evidence materially influenced the jury in a verdict adverse to the defendant. *State v. Myers, supra.*

## ANALYSIS

*Admission of Written Transcripts in Lieu of Tape-Recorded*
*Interview and Submission of Redacted Transcript*
*to Jury During Deliberations Without Prior Playing*
*of Edited Tape Recording in Open Court.*

Carlson was killed on April 15, 1994. Kula became a suspect in the murder investigation. On November 16, Mach, of the State Patrol, interviewed Kula regarding various matters, including guns owned by Kula and Kula's activities on the night of Carlson's murder. The interview was tape-recorded. Kula assigns as error the admission of the written transcripts of the tape-recorded interview.

In the interview, Kula, among other things, denied killing Carlson, admitted causing a van driven by his son to swerve toward Carlson on the night Carlson was killed, and said he may have had blackouts that night and did not remember parts of the night. When asked by Mach whether he owned an "Italian made seven point three five millimeter rifle," Kula denied owning such a rifle. Other evidence established that Kula had owned a 6.5-mm Carcano rifle and that Carcano rifles were made in Terni, Italy. Expert testimony established that the bullet found in Carlson's body was likely fired from such a rifle. In the interview, when Mach generally asked Kula to list guns he had owned and specifically asked whether he had owned a rifle, Kula failed to admit owning the 6.5-mm Carcano rifle. Kula also specifically denied having owned a gun made in Terni, Italy.

The tape-recorded interview contained certain inadmissible statements, including discussion of Kula's prior criminal record, references to hearsay regarding Kula's whereabouts on the night of the murder, and discussion of whether Kula was willing to submit to a polygraph examination. A written transcript of the tape recording was prepared. The State did not offer the tape recording itself into evidence. In lieu of the tape recording, the State offered into evidence both the complete written transcript, exhibit 240, and a redacted written transcript, exhibit 241, which deleted the inadmissible statements. Kula objected to the offer of the written transcripts on the basis that the tape itself was the best evidence of its contents. Kula's counsel noted that an edited

version of the tape recording, deleting the inadmissible statements, was available. The State does not dispute the existence of an edited tape recording on appeal.

The trial court overruled Kula's objection, admitted the written transcripts, and allowed the redacted written transcript to be submitted to the jury. The edited version of the tape recording was not played for the jury, nor was the redacted transcript read into the record in open court. Instead, the jury was allowed to read the redacted transcript in the jury room during deliberations. Throughout the trial, the State presented evidence which was proffered as inconsistent with statements Kula had made to Mach in the interview and which evidence had the tendency to establish Kula's guilt. At various points during its closing argument, the State encouraged the jury in general to read the redacted transcript and, in particular, to pay attention to certain portions of Kula's statements in the redacted transcript which were inconsistent with other trial evidence.

Kula assigns the following error regarding admission of the written transcripts of the interview:

> The trial court erred when it overruled [Kula]'s "best evidence" objections and allowed the State to introduce into evidence Exhibits 240 and 241, purported transcripts of [Kula]'s tape-recorded statements to a State Patrol investigator, rather than playing the recorded statements to the jury during the evidence portion of trial.

We agree with Kula that the trial court erred in admitting the transcripts to prove the contents of the tape recording without a finding that the tape recording was not available and in allowing the redacted transcript to be submitted to the jury to be read in the jury room during deliberations, where the jury first learned the contents of the transcript.

The issues raised by Kula's assignment of error are as follows: (1) whether the best evidence rule applies to the offer of the transcripts in lieu of the tape recording; (2) if so, whether the State proved an exception to the preference for the original tape recording which would allow admission of secondary evidence of the contents of the tape recording; and (3) if not, whether admission of the transcripts and the submission of the redacted transcript to the jury for its use in deliberations was harmless

error. For the reasons recited below, we conclude on the law and the facts of this case that the best evidence rule applies to the tape recording, that the State did not establish an exception which would allow the admission of secondary evidence of the tape recording, and that the admission of the written redacted transcript and its submission to the jury for its use in deliberations rather than the edited tape recording's having been played in open court were not harmless error.

Neb. Evid. R. 1002, Neb. Rev. Stat. § 27-1002 (Reissue 1995), provides:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress or of the Legislature of the State of Nebraska or by other rules adopted by the Supreme Court of Nebraska.

Rule 1002 is commonly known as the best evidence rule or the original document rule.

We have stated:

> The best evidence rule, which might more properly be called the "original writing" rule or, more correctly, the rule for "production of an original writing or document," is in reality "a rule of preference for the production of the original of a writing, recording or photograph when the contents of the item are sought to be proved. Better described as the 'Original Writing Rule', the rule is limited to writings, recordings, and photographs, Rule 1002; there is no general rule of evidence that a party must produce the best evidence which the nature of the case permits."

*Equitable Life v. Starr*, 241 Neb. 609, 615, 489 N.W.2d 857, 862 (1992) (quoting Michael H. Graham, Handbook of Federal Evidence § 1001.0 (3d ed. 1991)).

We further stated in *Equitable Life v. Starr*, 241 Neb. at 615, 489 N.W.2d at 862, that

> the original writing or "original document" rule, expressed in Rule 1002, does not set up a hierarchy for admissibility of evidence, but applies when a party seeks to prove material contents of a writing, recording, or photograph. . . . The purpose of Rule 1002 is the prevention of fraud, inac-

curacy, mistake, or mistransmission of critical facts contained in a writing, recording, or photograph when its contents are an issue in a proceeding.

(Citations omitted.)

■ By its terms, rule 1002 applies to proof of the contents of a recording. Therefore, because the State offered the written redacted transcript into evidence at trial in lieu of the content of the tape recording, the original tape recording was required pursuant to rule 1002.

Contrary to the dictates of rule 1002, the State argues on appeal that the best evidence rule does not apply because the transcripts were not introduced to prove the contents of the tape recording, but, instead, were introduced to prove "the conversation itself and [Kula]'s statements made therein." Brief for appellee at 16. The State asserts on appeal that it could use any medium it chose to prove the substance of Kula's statements and relies on cases from other jurisdictions for the proposition that it was not required to introduce the tape recording. See, *United States v. Rose*, 590 F.2d 232 (7th Cir. 1978), *cert. denied* 442 U.S. 929, 99 S. Ct. 2859, 61 L. Ed. 2d 297 (1979); *United States v. Gonzales-Benitez*, 537 F.2d 1051 (9th Cir. 1976), *cert. denied* 429 U.S. 923, 97 S. Ct. 323, 50 L. Ed. 2d 291. The cases relied on by the State are distinguishable because in those cases the government sought to prove the statements given by the defendant but did so through the testimony of participants to the conversation, not through a transcript made of a tape recording of the underlying conversation.

Rather than the cases relied on by the State, the instant case is more similar to *U.S. v. Workinger*, 90 F.3d 1409 (9th Cir. 1996). In *Workinger*, the government sought admission of a transcript of a tape recording made during the defendant's deposition. The court recognized that "a tape recording cannot be said to be the best evidence of a conversation when a party seeks to call a participant in or observer of the conversation to testify to it." *Id.* at 1415. The court noted, however, that while "ultimately, the transcript of the tape was intended to reflect the content of the conversation that took place[,] more proximately, it was intended to reflect the content of the tape itself." *Id.* In *Workinger*, the transcript was prepared by a secretary who lis-

tened to the tape, and the transcript that she prepared was intended to reflect what she heard on the tape. The U.S. Court of Appeals for the Ninth Circuit concluded that the best evidence rule applied under these circumstances and that "the tape [rather than the transcription of the tape] was the best evidence of what was recorded upon it." *Id.*

We find the reasoning of the Ninth Circuit in *Workinger* helpful in the analysis of Kula's assignment of error. At trial, the transcripts were intended to prove the contents of the tape recording; that is, the transcripts were offered in lieu of the tape recording based on Mach's representation at trial that the words in the transcripts were the words embodied on the tape recording. Rule 1002 dictates a preference for the production of the "original" recording rather than a transcription thereof. Rule 1002 was applicable to the tape recording and the offer of the transcripts in lieu thereof. Rule 1002 required that in order to prove the contents of the recording at trial, the original recording was required.

Having concluded that rule 1002 was applicable to the offer of the transcripts in lieu of the tape recording does not end our inquiry, however, because Neb. Evid. R. 1004, Neb. Rev. Stat. § 27-1004 (Reissue 1995), provides that under certain circumstances, the original is not required to be offered and other evidence of the contents of a recording is admissible. The rule 1004 exception to rule 1002 applies if one of the following is shown:

(1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

(2) No original can be obtained by any available judicial process or procedure; or

(3) At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and he does not produce the original at the hearing; or

(4) The writing, recording, or photograph is not closely related to a controlling issue.

§ 27-1004.

In the instant case, the district court did not make a specific finding that best evidence rule 1002 was or was not applicable

or that if applicable, the original tape recording had been lost or destroyed or that any of the other rule 1004 exceptions were applicable. At trial, the State's argument was essentially that the best evidence rule did not apply to either the tape recording or the admissibility of the transcripts, exhibits 240 and 241. We note for the sake of completeness that at trial, the State acknowledged that the complete tape recording would be inadmissible because of the inadmissible material which it contained. In ruling on Kula's motion for an order requiring that an edited version of the tape be played in open court, the district court stated that "the fact remains that the state does have the right to proceed in whatever fashion that they [sic] wish to do so and that will be the ruling here today." The record indicates that the district court found that the best evidence rule did not apply and that therefore the tape and the transcript were equally acceptable forms of evidence.

Although the district court did not explicitly make such finding, the State argues on appeal that should the best evidence rule apply, the redacted transcript was admissible because the tape recording was "unavailable" and that the State was therefore permitted to use secondary evidence, i.e., the redacted transcript, to prove the contents of the unedited tape recording. The State argues that the original tape recording was "unavailable" because it contained inadmissible statements, including discussion of Kula's prior criminal record, references to hearsay regarding Kula's whereabouts on the night of the murder, and discussion of whether Kula was willing to submit to a polygraph examination.

In support of its argument, the State cites to cases from other jurisdictions in which courts found that an original tape recording was "unavailable" because portions of the tape included inadmissible evidence. See *State v. Holland*, 781 S.W.2d 808, 811 (Mo. App. 1989) ("having at defendant's request deleted prejudicial portions of the tape recording, the trial court was well within the parameters of its discretion to consider the [unedited] tape to be 'unavailable' evidence, and in allowing as secondary evidence the transcript with the prejudicial content deleted as a precautionary measure to protect the defendant"); *State v. King*, 557 S.W.2d 51, 53 (Mo. App. 1977)

(citing "well-recognized exception" to best evidence rule that secondary evidence may be admitted when original is "unavailable" and deferring to trial court's finding that tape was unavailable because of incriminating references in tape and because defendant had not presented evidence that references could be effectively deleted from tape); *State v. Caldwell*, 671 S.W.2d 459 (Tenn. 1984). Contrary to such cases, which appear to rely on the common-law rule of best evidence rather than statutory best evidence laws, the language of Nebraska's statute, § 27-1004, which carves out exceptions to the best evidence rule makes exceptions for only specific instances of "unavailability," such as where the original has been lost or destroyed, cannot be obtained by judicial means, or is not closely related to a controlling issue. Neither the statute itself nor our prior case law has carved out an exception declaring that the original is "unavailable" for the reason that a portion of the original may be inadmissible. Where, as in the instant case, the record indicates that an edited tape recording is available, we decline to characterize the tape recording as "unavailable" for purposes of rule 1004.

In the instant case, the district court stated that the State could present the evidence relating to Mach's interview of Kula in any manner it preferred, which indicates that the district court found not that an exception to the best evidence rule was present, but, rather, that the best evidence rule was inapplicable. The district court misperceived the law.

As we have noted above, the best evidence rule did apply because the State offered the redacted written transcript to prove the contents of the tape recording. Pursuant to the best evidence rule, rule 1002, the edited tape recording should have been offered to prove the contents of the admissible portions of the tape recording unless an exception under rule 1004 was established which would permit the admission of secondary evidence in lieu of the original. No such exception was established in the record, nor did the district court find an exception to exist. On the contrary, the record indicates that an edited tape recording was available. The district court erred in treating the best evidence rule as inapplicable to the tape recording and to the offer of exhibits 240 and 241 and, further, in failing to determine whether a rule 1004 exception to the best evidence rule applied.

We conclude that the district court erred in admitting the transcripts and, in particular, admitting the redacted transcript in lieu of the edited tape recording.

Having determined that the district court erred in admitting the transcripts, we need to consider whether such error was harmless. In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Jackson*, 258 Neb. 24, 601 N.W.2d 741 (1999).

Relevant to our analysis of harmless error in the instant case is a review of the entire record and the manner in which the State's evidence was presented to the jury. *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999). The district court allowed the redacted transcript of the interview into evidence, and instead of having the edited tape recording played to the jury in open court at trial, the district court allowed the redacted transcript to go to the jury room for the jury's unsupervised review. We note that even in those cases where other jurisdictions have allowed a redacted transcript into evidence because a tape recording contained inadmissible statements, the redacted transcript was read into the record rather than being given to the jury for unsupervised review during deliberations. See, *State v. King*, 557 S.W.2d 51 (Mo. App. 1977); *State v. Caldwell*, 671 S.W.2d 459 (Tenn. 1984).

Throughout the trial, the State presented evidence which was designed to show inconsistencies between Kula's taped interview with Mach compared to the other facts proved or sought to be proved by the State, all of which was designed to impress the jury with Kula's guilt. In an effort to tie the trial evidence to the interview, the State referred generally to the transcripts a number of times in its closing argument and encouraged the jury to review the redacted transcript during deliberations. The State specifically drew the jury's attention to portions of the redacted transcript in which Kula discussed having caused a van driven by his son to swerve toward Carlson and another man as they were walking along the street on the night Carlson was killed. The State also specifically drew attention to what it described as Kula's repeated denials that he had owned a 6.5-mm Carcano rifle and characterized such denials as "an admission [by Kula]

that he used this gun to murder Jerry Carlson." Those portions of the transcript emphasized by the State in its closing argument, as well as other portions of the interview, such as Kula's statements that he may have had blackouts and was unable to remember everything that happened the night of Carlson's homicide, were evidence upon which the jury could reasonably have relied in finding Kula guilty. In view of the entire record, we cannot conclude that the district court's rulings admitting exhibits 240 and 241 were harmless.

We recently filed our opinion in *State v. Dixon*, 259 Neb. 976, 614 N.W.2d 288 (2000), which, although involving a different evidentiary issue, is instructive in the instant case. *Dixon* involved a tape recording which was admitted into evidence and played in open court at trial. Upon the jury's request, the district court in *Dixon* allowed an audiotape playback machine and the tape recordings into the jury room for the jury's unsupervised use during deliberations. In *Dixon*, we discussed the dangers inherent in allowing a jury to rehear portions of the trial evidence after it had commenced deliberations. We cited the traditional common-law rule that a trial court has no discretion to submit depositions and other testimonial materials to the jury room for unsupervised review and noted that the rule was designed to curtail the danger that the jury may give undue emphasis to the part of the evidence reheard or capable of repeated rehearing. We stated in *Dixon* that the proper procedure when a tape recording has been properly admitted into evidence is that the tape recording "should be played once in open court so that the jury can hear the tape in the same manner that it does other evidence." 259 Neb. at 987-88, 614 N.W.2d at 297. We further stated that when the jury makes a request to rehear certain evidence during deliberations, "the trial court must proceed to weigh the probative value of the evidence against the danger of undue emphasis, in open court in the presence of both parties or their counsel, before determining whether portions of the evidence should be reheard by the jury." *Id.* at 988, 614 N.W.2d at 297. If the court decides to allow such repetition of evidence, it should do so "in open court in the presence of the parties or their counsel or under other strictly controlled procedures of which the parties have been notified." *Id.* at 987, 614 N.W.2d at 297.

We determine that in the instant case, there was a palpable danger that the jury gave undue emphasis to the redacted transcript in its deliberations where it found Kula guilty of second degree murder and use of a weapon to commit a felony. If proper procedure had been followed, admissible portions of the tape recording would have been played once to the jury in open court in the same manner as other evidence. Even assuming without concluding that the State could properly have entered the redacted transcript into evidence rather than the tape recording, the procedure would, nevertheless, have been for the redacted transcript to be read to the jury once along with the other evidence at trial. Compare, *State v. King*, 557 S.W.2d 51 (Mo. App. 1977); *State v. Caldwell*, 671 S.W.2d 459 (Tenn. 1984). Instead, the first opportunity the jury had to learn the precise content of Kula's statements in the interview with Mach was by reading the redacted transcript in the jury room during deliberations. This procedure, combined with the State's suggestion to study the transcript and the opportunity for repeated unsupervised review, invited the jury to give undue emphasis to that portion of the evidence.

The redacted transcript contained statements which, as urged by the State, the jury could have found to incriminate Kula and which materially influenced the jury in a verdict adverse to Kula. See *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999). Allowing the redacted transcript to go to the jury room where the jury would have its first opportunity to learn the contents of the redacted transcript permitted the jury unrestricted review and placed undue emphasis on this evidence. Under the law and the facts of this case, we cannot conclude that the district court's error in admitting the redacted transcript instead of the edited tape recording and submitting the redacted transcript to the jury for its deliberation was harmless beyond a reasonable doubt. *State v. Jackson*, 258 Neb. 24, 601 N.W.2d 741 (1999). We therefore reverse Kula's convictions and remand the cause for a new trial.

*Kula's Statements to Jeffrey Barnes.*

Our determination that the district court committed reversible error by admitting the redacted transcript rather than the edited

tape and allowing the redacted transcript to go to the jury room where the jury first learned its contents resolves this appeal. While we are not required to consider Kula's additional assignments of error, see, *White v. Board of Regents, ante* p. 26, 614 N.W.2d 330 (2000); *In re Interest of Battiato*, 259 Neb. 829, 613 N.W.2d 12 (2000) (appellate court is not obligated to engage in analysis not needed to adjudicate case and controversy before it), we may, at our discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings, see *State v. Dixon*, 259 Neb. 976, 614 N.W.2d 288 (2000). We will therefore address certain of Kula's remaining assignments of error which involve issues likely to recur on remand.

Jeffrey Barnes was Kula's fellow inmate after Kula had been convicted of first degree murder at the first trial in 1995, the conviction for which was reversed in *Kula I*. At the second trial, Barnes testified regarding certain statements Kula had made to Barnes while they were incarcerated. Kula has assigned several errors relative to Barnes' testimony at the second trial. We conclude that Barnes' testimony regarding statements Kula made to him should not have been admitted in the absence of a ruling as to the voluntariness with which Kula made the statements and that the district court erred in failing to make a ruling on voluntariness when asked to do so by Kula.

At the second trial, Barnes testified as to statements Kula made to him on unspecified dates in the period from June 12, 1996, to May 15, 1997. These included statements regarding guns Kula owned and, specifically, that he had owned a 6.5-mm Carcano rifle. Barnes also testified about Kula's statements regarding Kula's activities on April 15 and 16, 1994, and, specifically, that after taking his son home, Kula had returned to Silver Creek. Kula asserts on appeal, inter alia, that in his conversations with Barnes, he denied killing Carlson but notes that Barnes was not allowed to testify regarding such exculpatory statements at trial.

Prior to the second trial, the State filed a motion in limine to prohibit Kula "from eliciting from witnesses exculpatory hearsay comments made by [Kula] professing his innocence or lack of involvement with respect to the Jerry Carlson homicide."

The district court stated in a November 18, 1998, order that although the issue seemed to be one appropriate to consider at trial, the problem would be relevant at the time of opening statements as the defense might attempt to refer to such testimony. The district court therefore sustained the motion, but granted counsel permission to address the issue further should trial proceed in a fashion not anticipated.

On November 13, 1998, Kula filed a motion requesting (1) a hearing to determine whether his statements to Barnes were voluntary and (2) following such hearing, an order to suppress evidence of such statements. In the motion, Kula asserted that any conversations Kula had had with Barnes resulted from the judgment and sentence imposed after the December 1995 trial and that prosecutorial misconduct caused the December 1995 trial to be unfair and to be reversed on appeal. Kula further asserted that his statements to Barnes resulted from his "prolonged and unreasonable detention . . . and the resulting anxiety, stress, duress, confusion, and coercive atmosphere associated therewith" and that therefore, the prosecutorial misconduct which resulted in his "unlawful conviction and prolonged incarceration" constituted an "improper influence upon [Kula] by the government" which rendered Kula's statements to Barnes involuntary.

On November 18, 1998, the district court entered an order ruling on various motions, including the State's motion in limine, but not Kula's November 13 motion. In the November 18 order, the district court noted that a hearing would be held November 20 to address other remaining motions. The record contains no indication that a hearing was held November 20, that any pretrial hearing on voluntariness was held, or that any pretrial ruling on voluntariness was made. The State asserts in its brief that Kula's counsel canceled the November 20 hearing in light of certain rulings in the November 18 order. Kula asserts in his brief that his counsel did not understand that the voluntariness issue was to be addressed at the November 20 hearing, but, rather, that the November 20 hearing was to address unrelated issues which had become moot due to the November 18 order.

On the second day of trial, after jury selection but before evidence was presented, Kula again raised the issue of the volun-

tariness of his statements to Barnes. The district court heard argument of counsel on the issue of whether a voluntariness hearing and ruling were required. After hearing such argument, the district court stated "[a]ll right, submitted," and moved on to other matters. The record shows no subsequent ruling on the matter.

The State called Barnes and elicited testimony establishing that Barnes knew Kula, that he and Kula had been in "pretrial custody status" together, and that they had discussed the events surrounding Carlson's killing. When the State asked Barnes to relate Kula's statements, Kula made a continuing foundational objection on the basis that the State had not established that the statements were voluntary. The district court overruled Kula's objection.

After the State completed its direct examination of Barnes, Kula moved to strike Barnes' testimony based on the lack of foundation and "the reason that we can't fully develop on cross-examination based on this court's prior ruling on a motion in limine as well as just the general circumstances, the full circumstances behind these statements." Kula asked the district court, if it denied the motion to strike, that the district court then consider overruling the motion in limine and allowing Kula to cross-examine Barnes regarding Kula's exculpatory statements made to Barnes. The district court overruled the motion to strike and allowed the motion in limine to stand.

Kula cross-examined Barnes within the limitations set by the district court's orders. Kula was not allowed to ask Barnes whether Kula had denied killing Carlson. However, Kula was allowed to bring out testimony from Barnes that Kula had never expressed to Barnes that he wanted to harm Carlson in any way, that Kula had not indicated to Barnes that he was in the area of the shooting on the night of April 15, 1994, and that Kula had not told Barnes that he had the Carcano rifle or 6.5-mm ammunition with him on the night of April 15.

Kula has raised four assignments of error regarding Barnes' testimony. Kula claims that the district court erred in (1) denying his request for a hearing to determine the voluntariness of his statements to Barnes, (2) overruling his foundational objections which were based on the State's failure to establish that

Kula's statements to Barnes were voluntary, (3) overruling his motion to strike Barnes' testimony on the grounds that Kula could not develop the circumstances surrounding his statements to Barnes without disclosing Kula's prior conviction, and (4) sustaining the State's motion in limine and precluding Kula from cross-examining Barnes regarding statements Kula made to Barnes denying involvement in Carlson's death. Following our review, we determine that the record shows that the district court did not rule on Kula's motion to determine voluntariness of his statements to Barnes as it is required to do under *State v. Bodtke*, 219 Neb. 504, 363 N.W.2d 917 (1985), and we therefore conclude that admission of Barnes' testimony without such a ruling was error.

In *Bodtke*, we held:

On questioned voluntariness, an accused's statement, whether an admission or a confession, made to private citizens, as well as to law enforcement personnel, must be voluntary as determined by a court for admissibility and as a fact ascertained by the jury. Such expression of law regarding voluntariness is based on our existing and oft-stated rule: To be admissible, a statement or confession must have been freely and voluntarily made.

219 Neb. at 513, 363 N.W.2d at 923.

In *Bodtke*, we recognized a distinction between an admission and a confession and noted that "[i]n a confession an accused admits guilt of every material element of the crime charged against him, whereas in an admission an accused acknowledges some fact or circumstance in itself insufficient to constitute an acknowledgment of guilt but tending to prove the ultimate fact of guilt." 219 Neb. at 508, 363 N.W.2d at 921. Kula's statements to Barnes did not amount to a confession, as he did not admit killing Carlson. However, the *Bodtke* standards apply to admissions as well as to confessions. Certain of Kula's statements to Barnes, particularly his statements that he owned a gun which shot the type of bullet found in Carlson's body and that he returned to Silver Creek after taking his son home, are evidence which would have a tendency to prove his guilt and are, therefore, admissions. Such admissions were helpful to the State's case, as they tended to establish facts consistent with

guilt and appeared to contradict statements Kula had made to investigators. Because Kula's statements to Barnes were admissions and because Kula raised a question as to the voluntariness of those statements, pursuant to the holding in *Bodtke*, the district court was required to make a preliminary finding as a matter of law that the statements were given voluntarily before admitting evidence of the statements, and the jury was required to make a factual finding of voluntariness.

At trial, the State argued that a hearing on voluntariness was not required in connection with statements made to private citizens as distinguished from law enforcement personnel. The State appears to have abandoned that argument on appeal and instead argues that Kula waived the hearing on voluntariness. The controlling law applicable to the voluntariness issue is that where requested to do so, the trial court is to make a preliminary determination of voluntariness as a matter of law, and the record shows that the district court was requested to do so.

The record in this case indicates that Kula did not waive the hearing on voluntariness. Rather, the record indicates that the district court did not rule on the issue of voluntariness, because it appears to have agreed with the State's argument at trial that no hearing or determination of voluntariness was required in regard to statements made to private citizens. Such determination was contrary to our holding in *State v. Bodtke*, 219 Neb. 504, 363 N.W.2d 917 (1985).

As stated above, *Bodtke* holds that to be admissible, an accused's admission or confession made to a private citizen must be voluntary. Where requested, such determination of voluntariness is to be made both as a preliminary determination by the court, as a matter of law regarding admissibility, and as a factual finding by the jury. In the instant case, the district court erred by failing to make the threshold determination as to the voluntariness of Kula's statements to Barnes prior to the admission of Barnes' testimony regarding Kula's admissions. Upon remand, the district court shall determine the voluntariness of Kula's statements prior to the admission of Barnes' testimony. In view of our direction upon remand, we need not consider Kula's additional assignments of error regarding Barnes' testimony.

## CONCLUSION

We conclude on the facts of this case that the district court committed reversible error in admitting the redacted transcript of the tape recording of the investigative interview of Kula in lieu of the edited tape recording and in permitting the jury to take the redacted transcript into the jury room during deliberation, where the jury first learned of its content. We further conclude on the record of the second trial that the district court erred in failing to make a threshold determination as a matter of law as to whether Kula's statements to Barnes were voluntary and admissible. We do not address Kula's remaining assignments of error. We reverse Kula's convictions and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.