STATE OF NEBRASKA, APPELLEE, V. CARLOS AGUILAR,
ALSO KNOWN AS JUAN CARLOS, APPELLANT.

652 N.W.2d 894

Filed November 8, 2002.   No. S-01-733.

Jim K. McGough, of Copple, Rockey & McGough, P.C., for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCormack, J.

## NATURE OF CASE

Carlos Aguilar was convicted by jury of four counts of delivery of a controlled substance, all Class III felonies. During the trial, outside the presence of the jury, Aguilar objected to testimony that he characterized as prior bad acts. He argues that this evidence had not been subject to a Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Reissue 1995), hearing (404 hearing) and moved for a mistrial. That motion was overruled. After the jury returned its verdict, Aguilar moved for a new trial because of the alleged erroneous admission of certain evidence. In addition, he asserted the trial court erroneously allowed the jury to read transcripts of alleged drug transactions while the recording was being played. Aguilar timely filed his appeal.

## BACKGROUND

Aguilar was charged with four separate counts of delivery of a controlled substance, methamphetamine. All four counts occurred between March and June 2000.

### March 25, 2000

The first count occurred on March 25, 2000. Ramon Rodriguez agreed to be a confidential informant for the Norfolk police, and he was to receive $100 for each attempt to make a controlled purchase of illegal drugs. Rodriguez was supervised by Officer Steven Mills. He was to attempt to purchase illegal drugs from a woman named "Yolanda" who lived in a trailer park near Johnson's Park in Norfolk. Before Rodriguez was sent to make the purchase, Mills searched his body, planted a tape recorder on him, and gave him money to make the purchase.

At about 8 p.m., Mills drove Rodriguez to a location near Johnson's Park near Yolanda's trailer. Tricia Frazier, Aguilar's girl friend, was at the trailer when Rodriguez arrived. Bobbie Kleinberg arrived at about the same time. While Rodriguez was inside the trailer, several other individuals arrived, including Aguilar. Kleinberg left, as did another individual, leaving only Rodriguez, Frazier, and Aguilar at the trailer. Later, Yolanda arrived.

After Yolanda arrived, Kleinberg returned and spoke to Aguilar. Kleinberg was going to "hook up" Aguilar with some drugs, i.e., get him drugs from a third-party source. Rodriguez then asked Yolanda if she had any drugs to sell him, but he was unable to purchase any drugs from her. Rodriguez then left the trailer, walked back to Johnson's Park, and made contact with Mills. Rodriguez was searched and informed Mills of what had transpired.

Rodriguez returned to the trailer at around 10 p.m. Before leaving for the trailer, Rodriguez was again searched by Mills and had a recording device planted on him. When Rodriguez arrived at the trailer, he observed Aguilar and Frazier. He asked Aguilar if he had any "coke" or "crank," and Aguilar stated that he was waiting for some. About a half hour later, Kleinberg arrived and talked to Aguilar about a possible drug purchase. Kleinberg then left. While she was gone, two other individuals came to the trailer.

Kleinberg again returned to the trailer, and she, Rodriguez, Aguilar, and Frazier left to obtain the drugs. The two other individuals left and went their own way. According to Rodriguez, he rode with Frazier in her van and they followed Aguilar and Kleinberg in her "Tracker" automobile. They drove to a parking lot by 12th Street and Prospect Avenue in Norfolk. Mills observed the van and the Tracker leave the trailer home, but did not follow them. According to Rodriguez, Kleinberg got out of the Tracker and went into a house across the street from the parking lot where they were parked. Aguilar climbed into the van.

Kleinberg later exited the house, walked over to Frazier's van, and climbed in. Once inside the van, she gave Aguilar the illegal drugs. Rodriguez, Aguilar, and Frazier then drove in Frazier's van to the apartment of Toni Shipley and went into a bedroom. According to Rodriguez, Aguilar separated a portion of the drug, which he concluded to be roughly an "eight ball" in quantity. He then bagged it up and sold it to Rodriguez. An "eight ball" is approximately 3 to 3½ grams of a drug. Rodriguez, Aguilar, and Frazier then drove back to the trailer in Frazier's van, and once they arrived, Rodriguez walked to Mills' vehicle and was searched. He gave Mills the drug and the tape recorder and told Mills what had occurred.

## MAY 15, 2000

On May 15, 2000, Rodriguez met with Mills and another officer at approximately 7 p.m. Rodriguez was again searched, equipped with a recording device, and given money to make a controlled purchase. He was instructed to try to purchase another "eight ball" of methamphetamine from Aguilar.

Rodriguez was let out of the car by Mills and walked down an alley to a house located on Indiana Street in Norfolk, where Aguilar and Frazier were residing. He knocked on the door and went into the home. He saw Aguilar, Frazier, and Shipley sitting at the dining room table smoking methamphetamine from a piece of aluminum foil. Rodriguez also observed an "eight ball" or more of methamphetamine in a plastic bag on the table. They began conversing, and Aguilar sprinkled more methamphetamine from the table into another piece of foil. He, Frazier, and Shipley proceeded to smoke the second foil. After the parties were finished smoking the second foil, Shipley left the home and Frazier went into the kitchen. Rodriguez then purchased methamphetamine from Aguilar. Aguilar picked the drugs up from the table, and Rodriguez paid him. Aguilar gave Rodriguez the drugs, and Rodriguez put them in his pocket. Rodriguez then left and met with Mills and told him what had happened. Mills searched Rodriguez and took the recording device and the drugs. Mills also took the leftover purchase money from him.

## MAY 19, 2000

On May 19, 2000, Rodriguez was again instructed by Mills to purchase drugs from Aguilar. Rodriguez was searched, given the money to make the controlled purchase, and equipped with a recording device. He was instructed to go to the corner of Eighth Street and Norfolk Avenue, where a laundromat was located, to attempt the purchase. Mills and Rodriguez parked their vehicle a couple of blocks south of the laundromat, and Rodriguez walked to it.

Upon entering the laundromat, Rodriguez saw Frazier and spoke with her about purchasing an "eight ball" of methamphetamine. She had some methamphetamine and put it in her laundry basket. Rodriguez then placed his money in the laundry

basket and took the drugs. He then walked outside and noticed Aguilar drive by in Frazier's van. He walked to the side of the building where the van was parked and stopped to talk to Aguilar. Rodriguez showed the methamphetamine that Frazier gave him to Aguilar, and Aguilar exchanged it for a larger amount.

After he was finished talking to Aguilar, Rodriguez found Mills. Mills searched Rodriguez and took the recording device and the drugs given to Rodriguez by Aguilar, and Rodriguez discussed what had happened. According to Mills, when Rodriguez was in the laundromat, he saw Frazier's van drive by, so he followed the van. He was able to observe Rodriguez and Aguilar talking at the van.

## June 6, 2000

The fourth count against Aguilar arose out of another controlled purchase of illegal drugs by Rodriguez on June 6, 2000. Before making the purchase, Rodriguez was again searched by Mills and was given purchase money and a recording device. Rodriguez testified that he was dropped off on the corner of Fourth Street and Omaha Avenue and that he walked to the Indiana Street location. He knocked on the door, went inside, and noticed Aguilar and Frazier sitting in the dining room playing a dice game. As Rodriguez was standing in the dining room, Aguilar pulled a Ziploc bag from his pocket, containing what appeared to be a gram of methamphetamine. In exchange for the bag, Rodriguez gave him $100.

Rodriguez later saw Mills and got into Mills' car. He gave Mills the drugs and the recording device and told Mills what had happened.

## Procedural History

The recordings of the alleged transactions were duplicated onto compact discs, and transcribed by Rodriguez with the help of a police officer. Much of the recorded conversations were in Spanish, so Rodriguez translated the conversations into English, while the officer typed. The translations were verified by two interpreters.

According to Rodriguez, the recordings of the conversations at issue and the partial transcripts of those conversations accurately portray the conversations that took place during and around the

time of the alleged transactions. Exhibits 41, 42, 43, 48, and 49 accompany the March 25, 2000, transaction. Exhibits 44 and 50 accompany the May 15 transaction. Exhibits 45 and 51 accompany the May 19 transaction. Finally, exhibits 46 and 52 accompany the June 6 transaction.

The trial court held a 404 hearing to determine whether the purported prior bad act evidence would be admissible at trial. The particular acts found relevant and admissible included (1) Aguilar's acquisition of drugs from Kleinberg on March 25, 2000, before selling drugs to Rodriguez and (2) evidence of Aguilar's smoking a foil of methamphetamine on May 15. The trial court found that the above events were proved by clear and convincing evidence and demonstrated opportunity, identity, and knowledge.

The trial court also found that there was a need for transcripts of the recordings and that it was within its discretion to allow them to be used. Aguilar argued that the recordings and the transcripts contained evidence of other acts committed by Aguilar that was not argued at the 404 hearing. The trial court noted that it wanted redacted compact discs and transcripts to be introduced to the jury.

Aguilar filed a motion in limine to exclude the State from using any testimony or evidence on the recordings or the transcripts. Aguilar argued that they contain inadmissible prior bad act evidence not subject to the 404 hearing. The record does not reflect additional discussions or rulings on the admissibility of the recordings or transcripts prior to the trial.

During the trial, the State offered exhibits 41 and 48, a redacted transcript and recording of Rodriguez' first attempt to purchase illegal drugs at Yolanda's trailer on March 25, 2000. Aguilar voir dired Rodriguez about the manner in which the transcripts were created, and he did so again each time a recording and transcript of an alleged transaction occurred. Following voir dire, Aguilar objected to the offer, but his objection was overruled.

Outside the presence of the jury, Aguilar argued the allegations contained in his April 12, 2001, motion in limine, which motion states as follows:

> 1. Both the audiotapes and the transcripts contain evidence of prior bad acts in violation of *Neb. Rev. Stat.*

§ 27-404(2) in the absence of a 404 hearing to determine the admissibility of any prior bad acts therein;

2. They contain inadmissible hearsay;

3. They are irrelevant to the charges against [Aguilar];

4. The prejudicial weight of the tapes and accompanying transcripts outweigh their probative value in violation of *Neb. Rev. Stat.* § 27-403;

5. The accompanying transcripts supplied with the audiotapes violate the best evidence rule, *State v. Dixon*, 259 Neb. 976, 614 N.W.2d 288 (2000) and *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000), and places undue emphasis on testimonial evidence; and

6. There is insufficient foundation to support the allocation of speakers on the accompanying transcript.

The trial court overruled the motion. It noted that such evidence is testimonial in nature and should not go back to the jury room, but that the jury could use the transcripts to follow along with the recording. Aguilar expressed his concern about the existence of rule 404 evidence on the recordings and transcripts. The State noted that it would excise as much of that information as it could out of the tapes and that it tried to pare down the evidence to just the transaction charged. To that, Aguilar responded:

To the extent that there's any other conversations on these tapes that have to do with other drug deals, our position is, No. 1, they shouldn't come in as 404 evidence. However, if they do come in, we'd ask the Court to give a limiting instruction telling [the jury] they don't apply to this case.

The trial court stated that it would give a limiting instruction at the time the evidence was published to the jury.

The instruction actually given by the trial court was not the limiting instruction contemplated. The instruction given told the jurors that the transcript was allowed for the limited purpose of following along with the recording, for assistance in identifying speakers, and for the benefit of an English translation of the portions of the conversations in Spanish. That same basic instruction was given to the jury each time a recording and transcript was offered.

When the recording and transcript of the May 15, 2000, transaction were offered to the jury, Aguilar again specifically

requested a rule 404 limiting instruction. The trial court stated that it would wait until the completion of the recording for any additional instruction, but never issued a rule 404 instruction in regard to the recording or transcript.

Aguilar complains of Rodriguez' being allowed to testify, over objection, that he observed Aguilar smoke a second foil of methamphetamine on May 15, 2000. Aguilar claims that this evidence exceeded the trial court's order because at the 404 hearing, the court limited the admission of prior bad act evidence with regard to smoking to the statement that Aguilar was seen "smoking a foil" of methamphetamine. Aguilar claims that his second foil was never subject to a 404 hearing.

Kleinberg testified at trial about events surrounding the March 25, 2000, delivery. Her testimony centered on events occurring immediately after she obtained the drugs for Aguilar on March 25 and gave the drugs to him. According to Kleinberg, she asked if Aguilar would give her some of the drugs that she had given to him. She stated that he then placed a quantity of the drug in a cellophane cigarette package and gave it to her.

At that point, Aguilar made a motion for mistrial, arguing that such evidence was not subject to a prior hearing outside the presence of the jury and was offered in violation of rule 404. The trial court overruled the motion. The trial court did, however, give a limiting instruction, which stated:

> Before we go any further, ladies and gentlemen, I'm going to give you an instruction at this time that any evidence that [Aguilar] may have been involved in a drug transaction with this witness on or about March 25, 2000, has been received only for the limited purposes of identity and for preparation, plan, or the opportunity to commit the crimes that have been charged in this case. You must consider the evidence for those limited purposes and for no other purposes.

After the direct examination of Kleinberg, the trial court stated that it had reviewed the motion for mistrial. It concluded that part of her testimony went beyond the testimony and evidence of the 404 hearing regarding Aguilar's giving drugs to Kleinberg. The trial court determined that it was error to include such testimony but that had there been a hearing on that part of

the transaction, it would have been admissible subject to the same limiting instruction previously given to the jury.

At the close of the State's evidence, Aguilar made motions to reconsider striking the testimony of Kleinberg and for directed verdict. The trial court overruled the motion for directed verdict. However, the court sustained the motion to reconsider and struck the additional testimony of Kleinberg not subject to the 404 hearing which did not directly deal with Rodriguez' purchase from Aguilar. Aguilar renewed his motion for mistrial due to the error, but was overruled. The jury was ordered to disregard the stricken testimony of Kleinberg about Aguilar's giving her some drugs. The jury was also reminded of the rule 404 limiting instruction that had been given during Kleinberg's testimony.

After the jury returned its verdict of guilty on all four counts, Aguilar filed a motion for new trial. Aguilar alleged that (1) the manner in which the tapes were handled at the time of trial placed an undue emphasis on them and (2) rule 404 evidence was allowed which was not subject to the previous 404 hearing. The trial court overruled the motion for new trial.

## ASSIGNMENTS OF ERROR

Aguilar alleges that the trial court erred in (1) admitting evidence of other crimes in violation of Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), and rule 404; (2) not granting a mistrial or motion for new trial; and (3) allowing the jury to review transcripts of the tapes of the controlled buys.

## STANDARD OF REVIEW

■ In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in determining admissibility. *State v. Trotter*, 262 Neb. 443, 632 N.W.2d 325 (2001).

■ Because the exercise of judicial discretion is implicit in Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995), it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under rules 403 and 404(2), and the trial court's decision will not be reversed absent an abuse of discretion. *Trotter, supra.*

■ The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Jackson*, 258 Neb. 24, 601 N.W.2d 741 (1999).

■ In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Bao*, 263 Neb. 439, 640 N.W.2d 405 (2002).

## ANALYSIS

### RULE 404 EVIDENCE

According to Aguilar, the trial court erred in admitting evidence of other crimes in violation of rules 403 and 404. In Aguilar's brief, he focuses on the evidence of his smoking drugs with Frazier and Shipley on May 15, 2000, and the March 25 incident when he gave Kleinberg drugs after he had initially obtained drugs from her. In addition, he argues that the recordings and accompanying transcripts contained prior bad act evidence.

■ Prior bad act evidence is evidence of other crimes, wrongs, or acts, aside from the crime charged, which tend to prove the character of a person and to show that he or she acted in conformity therewith when committing the charged crime. *State v. Canbaz*, 259 Neb. 583, 611 N.W.2d 395 (2000).

■ Evidence of other crimes which is relevant for any purpose other than to show the actor's propensity is admissible under rule 404(2). *State v. Sanchez*, 257 Neb. 291, 597 N.W.2d 361 (1999). Evidence that is offered for a proper purpose is often referred to as having a "special" or "independent" relevance, which means its relevance does not depend upon its tendency to show propensity. *Id.*

■ Bad acts that form the factual setting of the crime in issue or that form an integral part of the crime charged are not part of rule 404(2) coverage. See *U.S. v. Heidebur*, 122 F.3d 577 (8th Cir. 1997), quoting *U.S. v. Williams*, 95 F.3d 723 (8th Cir. 1996). In *U.S. v. Swinton*, 75 F.3d 374 (8th Cir. 1996), the court said that where evidence of crimes is so blended or connected with the ones on trial so that proof of one incidentally involves the other or explains the circumstances, it is admissible as an integral part of the immediate context of the crime charged. The

court further said where the other evidence is so integrated, it is not extrinsic and therefore not governed by rule 404(2). The trial court must, however, still follow rule 403, which excludes evidence where the probative value is outweighed by the prejudicial value.

In *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002), the alleged prior bad act evidence was that the defendant smoked marijuana just before he shot the victim. We said the act of smoking marijuana was not subject to the statute governing the admissibility of prior bad acts, as the State did not introduce the prior smoking of marijuana as evidence of the defendant's character to prove that he acted in conformity with that behavior on a later occasion, but, rather, smoking marijuana was contemporaneous with his other acts immediately before shooting the victim and was offered to explain the circumstances of the victim's death. See, *U.S. v. Carroll*, 207 F.3d 465 (8th Cir. 2000); *U.S. v. O'Dell*, 204 F.3d 829 (8th Cir. 2000); *U.S. v. Phelps*, 168 F.3d 1048 (8th Cir. 1999); *U.S. v. Tate*, 821 F.2d 1328 (8th Cir. 1987); *State v. Powers*, 10 Neb. App. 256, 634 N.W.2d 1 (2001).

The first inquiry is to determine if the evidence which Aguilar claims constitutes prior bad acts is, in fact, rule 404 evidence.

## METHAMPHETAMINE FOILS

The first alleged error raised by Aguilar is the admission of evidence that Aguilar smoked either one or two foils of methamphetamine when Rodriguez purchased drugs on May 15, 2000.

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in determining admissibility. *State v. Trotter*, 262 Neb. 443, 632 N.W.2d 325 (2001).

Because the exercise of judicial discretion is implicit in rule 401, it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under rules 403 and 404(2), and the trial court's decision will not be reversed absent an abuse of discretion. *Trotter, supra.*

Not all trial errors, even those of a constitutional magnitude, entitle an accused to a reversal of an adverse trial result. It

is only prejudicial error, that is, error which cannot be said to be harmless beyond a reasonable doubt, which requires that a conviction be set aside. *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996).

The smoking of the foil or foils occurred on May 15, 2000, at Aguilar's residence. Rodriguez was present because he had gone to the residence to purchase methamphetamine from Aguilar. Rodriguez did, in fact, purchase methamphetamine from Aguilar, and Aguilar smoked one or two foils of methamphetamine during this visit. We determine that the evidence of Aguilar's smoking the foils of methamphetamine on this occasion was not rule 404 evidence. It is part of the factual setting of the crime of Aguilar's selling methamphetamine to Rodriguez and is intrinsically intertwined with the charged offense.

### KLEINBERG'S TESTIMONY

The second alleged error raised by Aguilar is the admission of evidence of delivery by him of drugs to Kleinberg on March 25, 2000.

Aguilar complains of the following portion of Kleinberg's testimony:

Q. You gave the whole half ounce to [Aguilar]?

A. Yes.

Q. Did you ask him if he would hook you up with some of that?

A. I asked for some.

Q. Did he?

A. Huh?

Q. Did he hook you up with some crank?

A. I was given some, yes, for the —

Q. How much did he give you approximately?

A. I really don't know. I can't recall.

Q. Did he weigh it out?

A. No.

Q. Or did he eyeball it?

A. It was just grabbed that I saw.

Q. Did you have anything to put it in or did you just take it in your hand?

A. Cigarette cellophane.

Q. Like in a cigarette pack?

A. Yes.

The trial court, on a motion to reconsider its rulings as to Kleinberg's testimony, stated the following:

However, on the motion to reconsider striking the testimony of Bobbie Kleinberg, I too have thought about that since that time, and as I indicated from my statements, that was, while I considered that error, it was harmless error because it could have come in.

I guess the fact that it's error means that there should be something done about it. And looking at harmless error is after the fact, you know. Well, what was done at the time and was that — is that a real problem. Well, if it's error, the error should be removed whether it's harmless or otherwise, so I'm going to sustain [Aguilar's] motion to reconsider. And having reconsidered, I'm going to give an instruction to the jury which will direct that they [sic] — that the testimony of Bobbie Kleinberg as to [Aguilar's] giving some of the drugs to her after she had given drugs to [Aguilar], that is stricken and the jury will be directed to disregard that part of the testimony. But the prior testimony about the drugs being given by Miss Kleinberg to Mr. Aguilar are still admitted for the limited purpose of showing preparation, plan, identity, and opportunity.

The delivery of drugs by Kleinberg to Aguilar is not rule 404 evidence, but is direct evidence that forms the factual setting of the crime charged to show the source of the drugs Aguilar received and then sold to Rodriguez. See, *U.S. v. Heidebur*, 122 F.3d 577 (8th Cir. 1997); *U.S. v. Williams*, 95 F.3d 723 (8th Cir. 1996). As to all other testimony of Kleinberg, it was stricken by the court and the jury was instructed not to consider it.

■ The trial court concluded that the admission of Kleinberg's testimony, other than the testimony of the dealing of drugs by Kleinberg to Aguilar, was error. The trial court then concluded, however, that this error was harmless. The trial court's action in striking the portion of Kleinberg's testimony that the trial court considered the admission of to be error and instructing the jury to disregard such testimony removed any

prejudice to Aguilar. When an objection to or motion to strike improper evidence is sustained and the jury is instructed to disregard it, such instruction is deemed sufficient to prevent prejudice. *State v. McLemore*, 261 Neb. 452, 623 N.W.2d 315 (2001). We conclude, therefore, that this assignment of error is without merit.

### RECORDINGS AND TRANSCRIPTS

At the pretrial hearing, the trial court noted that the recordings and transcripts contain information beyond the scope of the hearing, but did not believe that conversations contained in the recordings fit within the category of bad acts. However, the court asked the parties to get together and redact the recordings and transcripts.

Despite any attempts to remove references to alleged prior bad acts, the transcripts that the jury read contained references to other bad acts or crimes committed by Aguilar that were not discussed at the 404 hearing. Prior bad act evidence is evidence of other crimes, wrongs, or acts, aside from the crime charged, which tend to prove the character of a person and to show that he or she acted in conformity therewith when committing the charged crime. *State v. Canbaz*, 259 Neb. 583, 611 N.W.2d 395 (2000).

The tapes and transcripts contain past drug dealings involving purchases and distribution by Aguilar. The trial court overruled Aguilar's objection and did not give a limiting instruction.

We conclude that the acts complained of are prior bad acts which would be subject to rule 404. We further conclude that the trial court erred in admitting the prior bad acts contained in the recordings and transcripts at issue, and particularly so in not giving a proper limiting instruction to the jury. The actions discussed by Aguilar were not proved outside of the presence of the jury by clear and convincing evidence. See, *State v. Trotter*, 262 Neb. 443, 632 N.W.2d 325 (2001); *State v. Sanchez*, 257 Neb. 291, 597 N.W.2d 361 (1999). Additionally, Aguilar requested, but never received, a proper rule 404 limiting instruction.

Having determined that the trial court erred in admitting the transcripts in the manner described above, we now determine if this error is harmless.

On each occasion that Rodriguez purchased drugs from Aguilar, Rodriguez was first searched by Mills and then provided money for the purchase. On each occasion, immediately after the purchase, Rodriguez returned to Mills, to whom he turned in the drugs and relayed what had occurred. On most of these occasions, Rodriguez was being directly observed by Mills for a portion of the time. Based on this evidence, we determine that the evidence properly admitted at trial overwhelmingly establishes Aguilar's guilt beyond a reasonable doubt. As a result, we conclude that the error in admitting that portion of the tapes containing prior bad act evidence did not materially influence the jury in reaching its verdict and was harmless beyond a reasonable doubt. As such, we determine that Aguilar's assignment of error as to receipt of the tapes is without merit.

### MOTION FOR MISTRIAL

Aguilar assigns as error the trial court's failure to grant a mistrial at the conclusion of Kleinberg's testimony concerning the events occurring on March 25, 2000.

The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Jackson*, 258 Neb. 24, 601 N.W.2d 741 (1999).

Aguilar's argument in support of his motion for mistrial was that the evidence produced by Kleinberg was not subject to a prior hearing outside the presence of the jury and was offered in violation of rule 404. As previously explained, the testimony of Kleinberg, with the exception of the direct delivery of drugs by Kleinberg to Aguilar, was subsequently stricken by the court, and the jury was instructed in this regard. If there was an abuse of discretion on the part of the trial court in initially denying the motion for mistrial, this abuse of discretion was corrected by the court's subsequently striking the majority of the testimony of Kleinberg and instructing the jury to disregard the stricken testimony. We conclude that Aguilar's assignment of error in regard to the denial of the motion for mistrial is without merit.

We have reviewed Aguilar's assignment of error of the failure of the trial court to grant his motion for new trial and conclude that his assignment of error is without merit.

## Transcripts of Tapes

Aguilar complains of the court's allowing the jury to review the transcripts of the tapes. The tape recordings were mainly in Spanish. The transcripts that were given to the jury during the playing of the tapes were in English. Neither the transcripts nor the tapes were permitted to go back to the jury room. The reason the jury was allowed to review transcripts of the tapes while the tapes were being played in open court was because portions of the tapes were in Spanish and the transcripts were in English. In *State v. Wade*, 7 Neb. App. 169, 581 N.W.2d 906 (1998), the Nebraska Court of Appeals held that the transcripts of audiotape recordings of a defendant's conducting drug transactions was admissible for the limited purpose of assisting the jury in identifying the speakers at any particular time. The Court of Appeals cited *United States v. Onori*, 535 F.2d 938 (5th Cir. 1976), which stated that the need or desire for transcripts of a tape arises from two circumstances: (1) where portions of the tape may be inaudible and (2) where it may be difficult to identify the speakers. In *State v. Loveless*, 209 Neb. 583, 308 N.W.2d 842 (1981), we held that it was not an abuse of discretion of the trial court in admitting a tape and the transcript of the tape, noting that the limited purpose of the transcript was to identify the speakers at any particular time.

In Aguilar's case, since the tapes were partly in Spanish, the English transcripts would assist in identifying speakers and allowing the jury to understand what was being said. We determine that Aguilar's assignment of error in this regard is without merit.

## CONCLUSION

For the reasons set out above, we determine that the admission of the evidence concerning Aguilar's smoking of foils of methamphetamine was not rule 404 evidence. We further determine that any error assigned to the admission of Kleinberg's testimony is without merit for the reasons that Kleinberg's testimony, with the exception of the testimony of the direct sale of drugs from Kleinberg to Aguilar, was stricken and the jury instructed to disregard it. As to any prior bad act evidence that was contained in the tape recordings played for the jury, we determine that any error in the failure to redact the tapes, failure to hold a 404

hearing, failure to give a rule 404 limiting instruction, and in the admission of any prior bad acts evidence on these tapes was harmless error beyond a reasonable doubt because the evidence properly admitted at trial overwhelmingly established Aguilar's guilt. As to the motions for mistrial and for new trial, we determine that the court did not abuse its discretion in denying both of the motions and further find that the trial court did not abuse its discretion in allowing the jurors to read transcripts in English of the conversations on the tapes, which were in Spanish, during the time that the tapes were being played.

AFFIRMED.

WRIGHT, J., participating on briefs.