IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CROWL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

GAVIN R. CROWL, APPELLANT.

Filed July 26, 2016.    No. A-15-1003.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

John S. Berry, of Berry Law Firm, for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

MOORE, Chief Judge, and IRWIN and PIRTLE, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Gavin R. Crowl appeals from his conviction in the district court for Lancaster County for third degree sexual assault of a child. On appeal, Crowl challenges certain evidentiary rulings made by the court and the sufficiency of the evidence to support his conviction. Finding no error, we affirm.

## II. BACKGROUND

On January 15, 2015, the State filed an information in the district court, charging Crowl with third degree sexual assault of a child in violation of Neb. Rev. Stat. § 28-320.01(3) (Reissue 2008), a Class IIIA felony. The State alleged that between April 1, 2011 and November 9, 2014, Crowl, a person 19 years of age or older, subjected L.R., a person 14 years of age or younger, to sexual contact.

Prior to trial, Crowl filed two motions in limine, seeking to exclude certain evidence at trial. The district court heard these motions on July 23, 2015.

In Crowl's first motion, he sought to exclude any reference (1) to Crowl kissing L.R. or being kissed by her 1 to 2 years prior to the alleged assault, (2) to church members telling Crowl to keep his distance from L.R., (3) by law enforcement that L.R. is "creeped out" by Crowl or that L.R. hides in bathrooms to avoid seeing Crowl, (4) that L.R. feels Crowl is pursuing her sexually, (5) to how the forensic interview of a child is conducted other than from someone who actually performed the interview in this case, (6) to the term "brony," and (7) to L.R. having nightmares of Crowl raping her.

After considering evidence offered by Crowl and extensive argument by the parties, the district court sustained the request to exclude any reference to a kiss. The court sustained Crowl's motion with respect to references to church members telling Crowl to keep his distance from L.R. and with respect to statements by law enforcement that L.R. is "creeped out" by Crowl or hides from him in bathrooms. The court's ruling did not exclude testimony by L.R. that she was "creeped out" and hides in bathrooms. Similarly, the court excluded statements by law enforcement that Crowl is pursuing L.R. sexually but not any testimony by L.R. to that effect. The court also determined that law enforcement could not talk about L.R.'s forensic interview but stated that it might revisit this ruling "if it comes up in trial in a different way." Reference to the word "Brony" used to describe Crowl as "a guy who likes My Little Pony" was excluded. Finally, the court determined that references to L.R.'s statement that she had nightmares about Crowl raping her was admissible.

In Crowl's second motion in limine, he sought to exclude any reference to him (1) taking photographs of L.R. while she was sleeping, (2) asking L.R. to marry him, and (3) giving gifts to L.R. The district court ruled that L.R. could testify about having seen pictures of her sleeping while "flipping through" pictures on Crowl's phone. The court also overruled the request to exclude references to Crowl having asked L.R. to marry him in 10 years. Finally, the court overruled the request to exclude references to Crowl giving gifts to L.R. and advised the parties that its rulings were preliminary "subject to evidentiary rulings at trial."

A jury trial was held on August 5-7, 2015. The State presented testimony from L.R., her mother, and one of the police officers who investigated the case. The district court received into evidence a recording of Crowl's interview by law enforcement, edited to remove references to topics excluded by the court's pretrial rulings, and the edited version was played for the jury. Crowl testified in his own behalf.

L.R. lives with her mother, J.R. Her father passed away in April 2011. L.R. was born in September 2001 and was 13 years old at the time of trial. L.R. testified that she had known Crowl for about 5 years. Crowl was friends with her father and worked with him in a computer repair business located in the family residence. After L.R.'s father passed away, her cousin ran the business. Crowl continued to work there for a while, but he no longer did so at the time of trial.

L.R. testified that certain things Crowl did made her feel uncomfortable. She was allowed to specify, over Crowl's objections of "403" and relevance, that "[a] marriage proposal" and "pictures" made her feel uncomfortable. At that point, the district court gave Crowl a standing

objection to trial testimony based upon his pretrial motions in limine. L.R. testified that she also felt uncomfortable when Crowl gave her a kiss and a massage. L.R. thought those things happened after her father died.

L.R. did not recall exactly when the massage occurred, but she felt it happened in the same year that her father died or at least closer in time to his death than to when the massage was reported to police, and probably while Crowl still worked at the computer repair business. L.R. stated that the massage took place on the couch in her living room. Only she and Crowl were present in the living room at the time. L.R. testified that Crowl asked her if she wanted a massage. She did not really know, so she said "sure." L.R. lay on the couch face up, and Crowl massaged her. According to L.R., she was wearing a T-shirt, and Crowl "went under [her] shirt and then went up." He touched her stomach first and then rubbed her breasts for maybe a minute, touching both nipples in the process. The whole massage lasted approximately two minutes. L.R. "started to think that this wasn't okay," and she told Crowl, "okay, thank you, that's enough," after which he stopped.

L.R. testified that she felt "[a]wkward" while the massage was happening. After the massage, L.R. felt uncomfortable being around Crowl and took actions to avoid seeing him. Over objection as to relevance and "403," L.R. testified that after the massage incident she would go into the bathroom at church after services were over to avoid seeing Crowl.

L.R. told her mother about the massage, but she did not recall when she did so. She remembered that Crowl and his parents came to the residence to talk about the massage at some point. L.R. recalled her mother and herself being present for this conversation. L.R. eventually told another girl about the massage during a sleepover because "a similar thing happened to her" and L.R. "felt bad for her." The other girl ended up telling the girl's mother about the massage incident, which led to the matter being reported to police. L.R. testified that she did not hate Crowl or have anything against him and that she had not been told what to say or to "try to get [Crowl] in trouble." L.R. then affirmed that Crowl did touch her breasts and nipples.

L.R. testified about pictures she observed on Crowl's phone. Specifically, L.R. testified that Crowl was "going through pictures" on his phone, and she saw two pictures of her sleeping "go by." According to L.R. there was a picture of her on the couch and one in her mother's bed. L.R. testified that she was "confused" when she saw the pictures, that she did not feel the pictures of her were appropriate, and that it "bother[ed]" her.

The "marriage proposal" occurred when L.R. was in Crowl's room in the attic of his residence while she was wearing her new two-piece bathing suit. According to L.R., after they watched the movie, "Rapunzel," Crowl said, "[W]hen you're 20 and I'm 30, we could get married." L.R. testified that she thought this was "okay" but that it also made her feel "[c]onfused." Crowl's attorney questioned L.R. at length about the marriage proposal. L.R. thought the proposal occurred after the massage. L.R. also thought she had spent time with Crowl's sister earlier in the day and that might have been why she was at Crowl's residence on that occasion.

L.R. recalled Crowl giving her various gifts. Specifically, she remembered receiving a journal right before this case was reported, along with a "Littlest Pet Shop" bobblehead toy and a box of 12 "My Little Pony" figurines both closer to when her father passed away; all of which

made her feel uncomfortable. She indicated that Crowl gave the gifts to her mother to give to her.

On cross-examination, Crowl's attorney questioned L.R. at length about the massage, the pictures, the gifts, and the marriage proposal.

J.R., L.R.'s mother, has known Crowl since 1992 when she met his family at church. J.R. testified that Crowl continued to work in the computer business in the home for about four months after L.R.'s father died, after which time she told him "it would be better if he would get a job somewhere else." She testified that she "let him go" because there were times when customers would arrive and "it would just be he and I there or he there and [L.R.]" and she "didn't want people to get the wrong idea about us being there by ourselves." J.R. explained, however, that while there were times Crowl might have been alone in a room with L.R. there was usually someone else in the house. When asked about Crowl's interactions with L.R., J.R. testified that they were together a lot and she thought that maybe they were getting too close. J.R. testified about gifts given to L.R. by Crowl, recalling a coat that Crowl made for L.R. in addition to the other gifts testified to by L.R. She did not find anything particularly troubling about the gifts. J.R. confirmed that at some point after L.R.'s father died and before the matter was reported to police, L.R. would hide in the bathroom at church to avoid talking to Crowl.

J.R. testified that L.R. told her about the massage, although she did not recall exactly when L.R. told her. She also thought Crowl briefly mentioned the massage, but she did not recall when he did so. J.R. found it troubling that Crowl had given L.R. a massage, but she did not know "how thorough" the massage was until she talked to L.R. later. J.R. also remembered having a discussion about the massage with Crowl and his parents. Over objections as to "relevance and 403," J.R. testified that during the discussion with Crowl and his parents, she told him that she thought "he needed to be sorry because . . . his actions had been inappropriate toward [L.R.] and she was having trouble with it."

Brytten Sorgenfrei was employed as a police officer at the time of the investigation in this case and assigned to follow up on a report that a child had made allegations of inappropriate touching. Sorgenfrei interviewed Crowl at his residence on November 22, 2014. Another investigator from Sorgenfrei's unit and Crowl's parents were also present during the interview. In December, subsequent to the interview, Crowl was placed under arrest.

Sorgenfrei identified exhibit 5 as the CD containing portions of the digital recording of the interview with Crowl. Over Crowl's objection, based on "relevance, 403, and hearsay" and the motions in limine previously filed, exhibit 5, the edited version of Crowl's police interview, was received into evidence and played for the jury.

On cross-examination, defense counsel questioned Sorgenfrei about the interview, specifically asking her about the computer game "Minecraft." Sorgenfrei understood "Minecraft" to be a video game "like Lego's" where "you can create characters," but she did not know if there was "a way that characters [could] actually marry each other" on the game. Sorgenfrei agreed that sometimes investigators lie to suspects in interviews and that doing so was permissible under the policy of the police department where she had been employed.

On redirect, Sorgenfrei noted that Crowl had admitted that he and L.R. "were married on Minecraft" whatever "married on Minecraft means." She also testified that Crowl admitted that

he asked L.R. to marry him when she was 20. Sorgenfrei testified that she did not tell Crowl any untruths during the interview.

At the conclusion of Sorgenfrei's testimony, the State rested. Crowl then made a motion to dismiss for failure to establish a prima facie case of third degree sexual assault, which was overruled by the district court.

Crowl, who was born in June 1991, testified about his friendship with and employment by L.R.'s father and the death of L.R.'s father in April 2011. Crowl testified that he was devastated by the death of his friend and mentor and felt obligated to continue working at the computer repair shop and to take care of L.R. and J.R. He also testified that after L.R.'s father passed, he felt responsible for her to an extent and felt like he owed L.R.'s father something for all he did for Crowl. Crowl testified that after he left the computer business, his relationship with L.R. and J.R. was "kind of back and forth" in that sometimes they "wanted to hang out again" and sometimes the relationship was strained.

Crowl recalled giving L.R. a massage. He testified that J.R. was present when the massage was given, but in his direct testimony, he did not specify where J.R. was located in the house relative to where the massage took place. He could not think of any occasions when he and L.R. were alone in the house together. Crowl acknowledged he had not talked to L.R. or J.R. before he gave L.R. the massage. He thought he might have spoken with J.R. about it afterwards at some point, but he was not certain. Crowl testified that he "was a little curious in [sic] massages so [he] thought [he'd] buy a couple of books," which he read during some "down time" while running computer repair programs. When asked what prompted him to give L.R. a massage, he replied, "Stupidity." Crowl testified that he massaged L.R.'s back and stomach. According to Crowl, "this type of stomach massage" is supposed to help with digestion and does not involve touching the chest. He testified that he attempted to follow the instructions in the manual he read, and he denied ever touching L.R.'s breasts or having any intent to touch her sexually when he gave her the massage. Crowl stated that he only gave L.R. one massage and never gave anyone else a massage.

Crowl testified that he gave L.R. gifts because he was concerned for her well-being and because of his close relationship with her father. He recalled making a jacket for L.R. and attending a convention with L.R., J.R., Crowl's girlfriend, and another individual after the massage in the spring of 2013.

On cross-examination, Crowl testified further about the massage. He narrowed the time frame for the massage to some point after the death of L.R.'s father in April 2011 and before August of that year when he left employment in the computer business. He denied leaving employment because of the massage. Crowl testified that the massage took place in L.R. and J.R.'s home. He claimed he did not remember in which room the massage took place, but he did not dispute L.R.'s assertion that it happened on the sofa in the living room. When asked if anyone else was in the room during the massage, he testified that J.R. was "going in and out" of "[t]he rooms." Crowl again denied having rubbed L.R.'s chest He agreed that in the police interview he told officers that he did not remember touching L.R.'s chest. He also agreed that in the interview, when asked if it was possible his hands had drifted up and touched her chest, he had replied "that's always a possibility."

On cross-examination, Crowl testified further about the gifts: a "My Littlest Pet Shop" toy, a "My Little Pony" set, a notebook, and the jacket, which he sewed with his mother's help. He remembered giving L.R. the "My Little Pony" set at the end of 2011 sometime after the massage. He stated that the "My Little Pet Shop" toy was given in 2013 in connection with a school-related success of L.R.'s. Crowl testified that he gave it to J.R. for L.R. because "it would look weird if I started giving gifts to girls directly." He gave the notebook to L.R. in November 2014, again through J.R., for the "[s]ame reason as before." He denied being told not to give anything to L.R. directly, but he testified that J.R. had told him at some point not to "go around the house" without calling first. Crowl denied ever being told by J.R. to stay away from L.R., and he testified that he did not know about L.R. avoiding him or feeling uncomfortable around him.

Crowl was also asked on cross-examination about the pictures on his phone and "the marriage thing." Crowl could not recall if he had photographs on his phone of L.R. sleeping, but when questioned further, he agreed it was possible he had pictures on his phone taken while L.R. was sleeping. Crowl agreed that at some point he asked L.R if she wanted to get married when she was 20, but he testified that this inquiry "was a joke." Crowl also testified that he and L.R. pretended at one point that their characters were married on "Minecraft," clarifying that in terms of actually playing the game, "[y]ou can't marry on Minecraft."

After Crowl's testimony, he rested and renewed his motion to dismiss, which motion was again overruled by the district court.

On August 7, 2015, the jury found Crowl guilty of third degree sexual assault of a child. The district court accepted the verdict and entered judgment accordingly.

On August 14, 2015, Crowl filed a motion for new trial. After hearing arguments at the start of the sentencing hearing on October 5, the district court overruled the new trial motion. At the conclusion of the sentencing portion of the hearing, the court sentenced Crowl to 3 years of probation.

## III. ASSIGNMENTS OF ERROR

Crowl asserts that the district court erred in (1) overruling his objections to certain evidence and (2) finding that there was sufficient evidence to sustain a guilty verdict.

## IV. STANDARD OF REVIEW

In proceedings where the Nebraska Evidence rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). Because the exercise of judicial discretion is implicit in Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2008), it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under Neb. Evid. R. 403 and 404(2), Neb. Rev. Stat. §§ 27-403 (Reissue 2008) and 27–404(2) (Cum. Supp. 2014), and the trial court's decision will not be reversed absent an abuse of discretion. *State v. McPherson*, 266 Neb. 734, 668 N.W.2d 504 (2003). An abuse of discretion occurs when a trial court's decision is

based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Ash, supra.* The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

## V. ANALYSIS

### 1. EVIDENCE RULINGS

Crowl asserts that the district court erred in overruling his objections to certain evidence that Crowl argues was irrelevant and unfairly prejudicial.

Under Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2008), irrelevant evidence is inadmissible. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). Under § 27-401, relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Johnson, supra.* Relevancy requires only that the degree of probativeness be something more than nothing. *Id.*

Under § 27-403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016). The fact that evidence is prejudicial is not enough to require exclusion under this section, because most, if not all, of the evidence a party offers is calculated to be prejudicial to the opposing party; it is only the evidence which has a tendency to suggest a decision on an improper basis that is unfairly prejudicial under this section. *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009).

Prior bad act evidence is evidence of other crimes, wrongs, or acts, aside from the crime charged, which tend to prove the character of a person and to show that he or she acted in conformity therewith when committing the charged crime. *State v. Aguilar*, 264 Neb. 899, 652 N.W.2d 894 (2002). Evidence of other crimes which is relevant for any purpose other than to show the actor's propensity is admissible under § 27-404(2). *State v. Aguilar, supra.* Evidence that is offered for a proper purpose is often referred to as having a "special" or "independent" relevance, which means its relevance does not depend upon its tendency to show propensity. *Id.* Bad acts that form the factual setting of the crime in issue or that form an integral part of the crime charged are not part of the coverage under § 27-404(2). *State v. Aguilar, supra.* Section 27-404(2) does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015). Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime, or evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or if the other crimes

or bad acts are necessary for the prosecution to present a coherent picture of the charged crime. *Id.*

### (a) L.R. "Creeped Out" by Crowl

Crowl argues that the district court should have excluded statements in the interview recording that L.R. is "creeped out" by Crowl and similar language. He argues that these statements are hearsay statements and highly prejudicial because stating that someone is creepy in the context of an investigation is "tantamount to calling a person a 'pervert' or a 'child molester.'" Brief for appellant at 11.

During the police interview, Sorgenfrei explained that L.R. was uncomfortable with Crowl's gift giving, which was one reason she had hid in the bathroom from him, and that she had said she was "creeped out" by Crowl. Sorgenfrei also explained that L.R. felt Crowl was attracted to her.

The record shows that the gifts in question were given in the period between when the massage occurred and when it was reported to police. Evidence of L.R.'s reaction to and feelings about receiving these gifts provides a contextual background for evaluating the interactions between Crowl, L.R., and J.R. in that period. We disagree that this evidence had a tendency to suggest a decision on an improper basis.

The State argues that the reference to L.R. having said she was "creeped out" by Crowl is either not hearsay or was offered for a valid non-hearsay purpose. Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). If an out-of-court statement is not offered for the purpose of proving the truth of the facts asserted, it is not hearsay. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016). A statement is not hearsay if the proponent offers it to show its impact on the listener and the listener's knowledge, belief, response, or state of mind after hearing the statement is relevant to an issue in the case. *State v. Poe*, 292 Neb. 60, 870 N.W.2d 779 (2015). We conclude that reference to L.R. having said she was "creeped out" by Crowl was not offered to prove that L.R. was in fact "creeped out" by him, but was apparently offered to show why L.R. was avoiding Crowl.

Even assuming the admission of this evidence was error, it was harmless. In a harmless error review, an appellate court looks at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the guilty verdict rendered in the trial court was surely unattributable to the error. *State v. Ash, supra*. As discussed below, there was sufficient evidence to support Crowl's conviction for third degree sexual assault of a child. The evidence shows that when Crowl was at least 19 and L.R. was younger than 14, he massaged her chest under her shirt for about a minute, touching both of her nipples. In addition, there was circumstantial evidence of Crowl's interest in L.R. from which the jury could find that his conduct was intentional and for the purpose of his sexual arousal or gratification. The guilty verdict was surely unattributable to any error in the admission of the evidence that L.R. stated she was "creeped out" by Crowl.

## (b) Photographs of L.R.

Crowl argues that the evidence about the photographs L.R. observed on Crowl's phone of herself sleeping were not relevant and were unfairly prejudicial. He argues that evidence concerning the photos was unfairly prejudicial because the implication is that he behaved strangely, and thus the evidence had a tendency to suggest a decision on an improper basis.

We disagree. This evidence is at least somewhat relevant to show Crowl's interactions with and interest in L.R. The evidence was not unfairly prejudicial. As noted by Crowl, the evidence shows L.R. was fully clothed in the photos and there was no evidence to suggest that she was in a suggestive pose. During the police interview, Crowl discussed other photos of L.R. which he admitted to having accessible on his phone, including a photo of L.R. with a gift from her father, another of L.R. with Crowl's sister, a facial picture taken by L.R., and a photo of L.R. on a horse at the zoo. The photos all are of a type that anyone might have on a phone or other digital device, given the ease with which such pictures are obtained and preserved. They all were at least somewhat relevant to illustrate the relationship between Crowl, L.R., and their families in the relevant period. The district court did not err in admitting this evidence.

Further, Crowl questioned L.R. about the photos, eliciting testimony about what L.R. was doing in the photos, where she saw them, and what she was wearing. Introduction of evidence by the defense waives any objection to the earlier introduction of evidence on the same subject by the State. *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989). Even if the district court had erred in admitting this evidence, Crowl waived any such error.

## (c) Marriage Proposal

Crowl argues that references to Crowl having asked L.R. if she would marry him when she was 20 should have been excluded as irrelevant. He also argues that this evidence is unfairly prejudicial as it implies he was trying to marry a minor. We disagree with Crowl's assertion that the marriage proposal statement unfairly suggests that he was seeking a child bride. There is nothing about this evidence that tends to prove Crowl's character or shows that he acted in conformity therewith when committing the charged crime of third degree sexual assault of a child. Rather, the statement is relevant to provide factual context for Crowl's interactions with L.R. in the period between when her father died and when the massage was reported to police. The district court did not err in admitting this evidence.

Further, as with the evidence of the photos, Crowl questioned L.R. at length about the circumstances and nature of the marriage proposal, and had the district court erred in admitting other evidence with respect to the marriage proposal, Crowl waived any such error. See *State v. Anderson, supra*.

## (d) Gifts Given to L.R.

Crowl argues that references to him giving gifts to L.R. were not relevant and were unfairly prejudicial, suggesting that he was acting inappropriately toward L.R. As noted above, this evidence provides factual context and background for Crowl's interactions with L.R. and J.R. in the relevant period. This is not prior bad act evidence. The district court did not err in admitting this evidence, and even if it had, any such error was waived by Crowl as he questioned

both L.R. and J.R. about the nature and timing of the gifts given and testified about them during his own direct examination. See *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989).

### (e) Hiding in Church Bathroom

Crowl argues that the district court should have excluded testimony from J.R. about L.R. hiding in the bathroom after church to avoid Crowl. He complains that the "same hearsay statement" about L.R. hiding was made by law enforcement during the interview of Crowl. Crowl argues that this testimony lacks foundation and is hearsay. L.R. testified over objection his relevance and "403" objection that she hid in the bathroom to avoid seeing him, and Crowl argues that her testimony was unfairly prejudicial because it invokes sympathy for the victim.

As stated above most evidence offered by a party is calculated to be prejudicial to the opposing party. See *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009). Evidence about L.R. hiding to avoid Crowl was relevant to provide context for her interactions with Crowl following the massage and before the massage was reported to police. It does not suggest a decision on an improper basis. Crowl's objections to J.R.'s testimony were sustained twice on foundational grounds, but she was allowed to testify about seeing L.R. hiding once she established a timeframe. The district court did not err in admitting testimony by L.R. and J.R. on this topic. Any references in the interview recording to L.R. hiding in the bathroom were cumulative to the testimony of L.R. and J.R. on this topic which was properly admitted. Erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact. *State v. DeJong*, 287 Neb. 864, 845 N.W.2d 858 (2014).

### (f) Cumulative Error Doctrine

Finally, Crowl argues that the cumulative effect of the district court's evidentiary errors was fatal to his constitutional right to a fair trial. See *Wamsley v. State*, 171 Neb. 197, 106 N.W.2d 22 (1960) (one or more trial errors alone might not constitute prejudicial error, but cumulative effect may be to deprive defendant of constitutional right to public trial by impartial jury). Having found no error in the court's evidentiary rulings, we reject Crowl's assertion that cumulative error in those rulings denied him a fair trial.

### 2. SUFFICIENCY OF EVIDENCE

Crowl asserts that the district court erred in finding that there was sufficient evidence to sustain a guilty verdict. Crowl was convicted of third degree sexual assault of a child pursuant to § 28-320.01(1), which states that "[a] person commits sexual assault of a child in the second or third degree if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older." "Sexual contact" is defined in Neb. Rev. Stat. § 28-318(5) (Cum. Supp. 2014) as the "the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts." That subsection also states that sexual contact "shall only include such conduct which can be reasonably construed as being for the

purpose of sexual arousal or gratification of either party." § 28-318(5). "Intimate parts" are defined in § 28-318(2) as "the genital area, groin, inner thighs, buttocks, or breasts."

In proving sexual contact, the State need not prove sexual arousal or gratification, but only circumstances and conduct which could be construed as being for such a purpose. *State v. Osborne*, 20 Neb. App. 553, 826 N.W.2d 892 (2013). When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence. *State v. Burke*, 23 Neb. App. 750, 876 N.W.2d 922 (2016). Intent may be inferred from the words and acts of the defendant and the circumstances surrounding her conduct. *Id.* Circumstantial evidence is not inherently less probative than direct evidence. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016).

In this case, the jury found the evidence was sufficient to support a conviction for third degree sexual assault of a child. In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, as these matters are for the finder of fact. See *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). The evidence shows that when Crowl was at least 19 and L.R. was younger than 14, he gave her a stomach massage. L.R. testified that after massaging her stomach, Crowl proceeded to massage her chest under her shirt for about a minute, touching both nipples in the process. Crowl denied touching L.R.'s chest, but admitted during the police interview that it was possible his hands may have drifted. The evidence is conflicting or unclear as to J.R.'s location during the massage. There is also circumstantial evidence of gifts given by Crowl to L.R., references to marriage, and Crowl's interactions with the family both before and after the death of L.R.'s father and before and after the massage, all of which provided context for the relationship between Crowl and L.R as well as Crowl's mental process or state of mind. The jury, as fact finder, was tasked with resolving conflicts in this evidence and evaluating the credibility of the witnesses. There was circumstantial evidence from which the jury could find that Crowl touched L.R.'s chest and that his conduct was intentional and for the purpose of his sexual arousal or gratification. Viewing and construing the evidence most favorably to the State, we find the evidence was sufficient to support the jury's finding that Crowl was guilty of third degree sexual assault of a child.

## VI. CONCLUSION

The district court did not err in overruling Crowl's evidentiary objections as set forth above, and the evidence was sufficient to support Crowl's conviction.

AFFIRMED.